**Appeal No**. _____

---

**IN THE UNITED STATES COURT OF APPEALS FOR
THE ELEVENTH CIRCUIT**

---

*Music Specialist, Inc., et al.,*
                              *Plaintiffs/Appellants*

v.

*Warner Chappell Music, Inc., et al*
                              *Defendants/Appellees.*

---

On Petition from the United States District Court
for the Southern District of Florida
Case No. 1:18-cv-25474-RAR
Judge Rodolfo A. Ruiz

---

**PETITION BY PLAINTIFFS FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

---

Carlton LP Talbot
CARLTON LP TALBOT ATTORNEY AT LAW
123 NW 23rd Street
Miami, FL 33127
(305) 697-3030

Peter G. Herman
PETER HERMAN, P.A.
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
(954) 882-1133

Brady F. Williamson
SALZANO, LAMPERT & WILSON, LLP
275 Madison Avenue, 35th Floor
New York, NY 10016
(646) 863-1883

*Attorneys for Appellants Music
Specialist, Inc and Sherman Nealy*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 8

FACTUAL BACKGROUND AND STATEMENT OF THE CASE ................... 11

STATEMENT OF THE QUESTION PRESENTED ............................................ 12

JURISDICTIONAL STATEMENT ..................................................................... 12

RELIEF SOUGHT BY PLAINTIFFS/APPELLANTS ......................................... 13

ARGUMENT ..................................................................................................... 13

   I.     WHETHER PLAINTIFFS CAN RECOVER DAMAGES PRIOR TO THE
   THREE-YEAR LOOKBACK IS A CONTROLLING QUESTION OF LAW .. 14

   II.     THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF
   OPINION ON THE DISCOVERY RULE'S IMPACT ON THE THREE-YEAR
   DAMAGES BAR UNDER 17 U.S.C. 507(b) ...................................................... 16

   III.     INTERLOCUTORY REVIEW OF THE THREE-YEAR LOOKBACK
   FOR DAMAGES UNDER THE DISCOVERY RULE MAY MATERIALLY
   ADVANCE THE TERMINATION OF THIS LITIGATION ............................ 17

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) .................... 20

CERTIFICATE OF SERVICE .............................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*D'Pergo Custom Guitars, Inc v. Sweetwater Sound, Inc.*,
  No. 17-CV-747-LM, 2021 WL 294514 (D.N.H. Jan. 28, 2021) ........................ 10

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*,
  No. 17-CV-747-LM, 2019 WL 188696 (D.N.H. Jan. 14, 2019) ........................ 10

*Grand Lodge of Pa. v. Peters*,
  2008 WL 2790237 (M.D.Fla. July 18, 2008) ...................................................... 16

*Habersham Plantation Corp. v. Molyneux*,
  2011 U.S. Dist. LEXIS 117511 (S.D. Fla. Aug. 19, 2011) ............................... 16

*In re Trasylol Prod. Liab. Litig.*,
  2010 WL 2541892 (S.D. Fla. June 22, 2010) ............................................... 15, 16

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ................................................................................. 14

*Mavrix Photo, Inc. v. Rant Media Network, LLC*, et al.,
  No. CV 19-07270-DMG (AFMx)(C.D. Cal. Nov. 2, 2020) ............................... 10

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ....................................................... 13, 14, 16, 17

*Mitchell v. Capitol Records, LLC*,
  287 F. Supp. 3d 673 (W.D. Ky. 2017) ................................................................ 10

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
  549 F.3d 1344 (11th Cir. 2008) ......................................................................... 17

*Petrella v. MGM*,
  572 U.S. 663 (2014) ......................................................................................... 8, 9

*Polar Bear Productions, Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ........................................................................ 9, 16

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020) ................................................................. 9

*Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*,
   No. CV 20-4085-DMG (KSX), 2021 WL 566500 (C.D. Cal. Jan. 5, 2021)....... 10

**Statutes**

17 U.S.C. § 507(b)................................................................................. 8

28 U.S.C. § 1292(b).......................................................................... 8, 13

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE**
**DISCLOSURE STATEMENT**

Music Specialist, Inc. (Plaintiff-Appellant)

Music Specialist Publishing (d/b/a of Plaintiff-Appellant)

Nealy, Sherman (Plaintiff-Appellant)

Baker, Garfield (entitled to % of recovery per agreement with Plaintiff-Appellant Nealy)

Smith, Byron (entitled to % of recovery per agreement with Plaintiff-Appellant Nealy)

Herman, Peter (Appellant's Counsel)

Peter Herman, P.A. (Appellant's Counsel)

Talbot, Carlton (Appellant's Counsel)

Carlton LP Talbot Attorney at Law (Appellant's Counsel)

Moreno, David (Appellant's Counsel)

Brown Rudnick LLP (Appellant's Counsel)

Lewis, Chelsea (Appellant's Counsel)

Lewis Law, LLC (Appellant's Counsel)

Salzano, Frank (Appellant's Counsel)

Williamson, Brady (Appellant's Counsel)

Salzano, Lampert & Wilson, LLP (Appellant's Counsel)

Warner Chappell Music, Inc. (Defendant-Appellee)

Artist Publishing Group, LLC (Defendant-Appellee)

Atlantic Recording Corporation (Defendant)

Stetson, Karen (Appellee's Counsel)

Gaines, Jonathan (Appellee's Counsel)

Gray Robinson, P.A. (Appellee's Counsel)

King, Jonathan (Counsel for Defendant Atlantic Recording)

Cowan, Liebowitz & Latman, P.C. (Counsel for Defendant Atlantic Recording)

Rodolfo A. Ruiz II (United States District Judge for Southern District of Florida)

Jacqueline Becerra (United States Magistrate Judge for Southern District of Florida)

# INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 5, Plaintiffs petition this Court for permission to appeal the order partially granting Defendants' motion for summary judgment, which the district court certified for interlocutory review under 28 U.S.C. § 1292(b). Summary Judgment Order dated June 4, 2021 at 14 (A0020)("Summary Judgment Order"); Certification Order dated June 21, 2021 at 1-3 (A0002-0004)("Certification Order").

As the District Court's Certification Order explains, the question certified for immediate review – whether the three year statute of limitations under 17 U.S.C. § 507(b) bars the recovery of damages incurred more than three-years prior to filing suit when the discovery rule dictates the accrual of a copyright claim – meets all of the elements required for an interlocutory appeal under 1292(b), i.e., (1) "presents a controlling question of law"; (2) on which "there is a substantial ground for difference of opinion"; and (3) whose resolution on "appeal will materially advance the ultimate termination of the litigation," and is, therefore, "ripe and appropriate for appellate review." Certification Order at 1-3 (A0002-0004)(citing 28 U.S.C. 1292(b)).

17 U.S.C.§ 507(b) states "[n]o action shall be maintained under the provisions of this title unless commenced within three years after the claim accrued." Relying on 17 U.S.C. § 507(b) and looking at the question in the context of the separate-

accrual rule (also known as the incident of injury rule) and the doctrine of laches, the Supreme Court in *Petrella v. MGM*, 572 U.S. 663 (2014), a case that originated in the Ninth Circuit, explained that for copyright actions "the limitations period generally begins to run … when 'the plaintiff can file suit and obtain relief,'" and thus, "a copyright claim … 'accrues when an infringing act occurs." *Petrella*, 572 U.S. 663 at 670. Ultimately, the *Petrella* Court found that "a successful plaintiff [in a copyright infringement action] can gain retrospective relief only three years back from the time of suit." *Id.* at 677. However, the *Petrella* Court also explicitly acknowledged that, while not "pass[ing] on the question … nine Courts of Appeals ha[d] adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis of the claim." *Id*. at n. 4 (internal citations omitted).

Six years later, the Second Circuit in *Sohm v. Scholastic Inc*., 959 F.3d 39 (2d Cir. 2020) became the first circuit court *post*-Petrella to consider the issue of whether copyright infringement damages were recoverable outside the three-year lookback period when the discovery rule was applicable. *Sohm*, 959 F.3d 39 at 49-52. Reasoning that *Petrella* was "binding precedent," and that "[t]he *Petrella* Court partially based its determination that laches was inapplicable to actions under the Copyright Act on the conclusion that the statute 'itself takes account of delay' by

limiting damages to the three years prior to when suit is filed," the *Sohm* court found that "a plaintiff's recovery is limited to damages incurred during the three years prior filing suit," even when the discovery rule applied. *Id.* at 52.

Prior to *Petrella*, the Ninth Circuit in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 705–706 (9th Cir. 2004), a case to which *Petrella* makes no reference, found that "507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discovery–and reasonably could not have discovered–the infringement before the commencement of the three-year limitation period," i.e., when the discovery rule is applicable. And post-*Petrella* "district courts within the Ninth Circuit and elsewhere largely rejected the theory" accepted by *Sohm* that *Petrella* "strictly barred any recovery for infringements occurring prior to three years before the date of filing, without exception." *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, No. CV 20-4085-DMG (KSX), 2021 WL 566500, *4 (C.D. Cal. Jan. 5, 2021)(citing to, among other cases, *Mavrix Photo, Inc. v. Rant Media Network, LLC*, et al., No. CV 19-07270-DMG (AFMx), at *5-6 (C.D. Cal. Nov. 2, 2020); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, No. 17-CV-747-LM, 2019 WL 188696, at *3 (D.N.H. Jan. 14, 2019)[1]; and *Mitchell v. Capitol Records, LLC*, 287 F. Supp. 3d 673,

---

[1] Prior to trial, the *D'Pergo* court, seated in the First Circuit, had occasion to reconsider the issue in light of *Sohm* as part of the defendant's motion *in limine,* ultimately rejecting *Sohm's* interpretation of *Petrella* and "adher[ing] to its prior ruling that the limitations of damages discussed in *Petrella* do not apply to claims that are timely under the discovery rule. *D'Pergo*

677-78 (W.D. Ky. 2017)). Relying on *Polar Bear*, the *Starz* court ultimately found that "the discovery rule [i]s an exception to the three-year damages bar imposed by Section 507(b). *Id.* at *7. [2]

As such, there is a circuit split as to the question certified in this case, and this Court should permit this appeal and opine on the issue.

## FACTUAL BACKGROUND AND STATEMENT OF THE CASE

Plaintiffs commenced this lawsuit on December 28, 2018, alleging that the Defendants were responsible for infringing on copyrights owned by the Plaintiffs.

Through subsequent filings, including the parties' cross motions for summary judgment, Defendants argued that Plaintiffs' copyright infringement claims were barred by 17 U.S.C. 507(b) because Plaintiffs did not bring their claims until 2018 despite alleging that Defendants had been infringing on Plaintiffs' copyrights dating back to 2008; and in response, Plaintiffs argued that its claims were not barred, under the discovery rule, because Plaintiffs were unaware of Defendants' infringements until January of 2016, and that lack of knowledge was reasonable under Plaintiffs' circumstances. In addition, Defendants contended that, regardless of the

---

*Custom Guitars, Inc v. Sweetwater Sound, Inc*., No. 17-CV-747-LM, 2021 WL 294514, at *11 (D.N.H. Jan. 28, 2021).

[2] An appeal of the *Starz* decision is currently pending in the Ninth Circuit Court of Appeals; Docket No. 21-55379.

applicability of the discovery rule, Plaintiffs' damages were nonetheless limited to the three-years prior to the commencement of the lawsuit, or December 28, 2015.

On March 8, 2021, the District Court Magistrate Judge issued a report and recommendation in which she opined that Plaintiffs' claims should not be barred by the three-year statute of limitations under 17 U.S.C. 507(b), but that, nonetheless, Plaintiffs damages were limited to the three-year period prior filing suit under the discovery rule. On June 4, 2021, the District Court affirmed and adopted the report and recommendation in full. And on June 21, 2021, upon the joint request of the parties by way of an *ore tenus* motion, the District Court certified the case for interlocutory review pursuant to 28 U.S.C. § 1292(b).

## STATEMENT OF THE QUESTION PRESENTED

Plaintiffs respectfully request that this Court accept interlocutory review of the following issue:

1.  Whether the three year statute of limitations under 17 U.S.C. § 507(b) bars the recovery of damages incurred more than three-years prior to filing suit when the discovery rule dictates the accrual of a copyright claim?

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1292. On June 21, 2021, the District Court granted the parties' *ore tenus* motion to certify the above issue for

interlocutory appellate review pursuant to 28 U.S.C. § 1292, finding that the issue of whether Plaintiffs' were entitled to damages incurred more than three-years prior to filing suit involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. Plaintiffs' petition is timely pursuant to 28 U.S.C. § 1292(b).

## RELIEF SOUGHT BY PLAINTIFFS/APPELLANTS

Plaintiffs request that this Court issue an order reversing the District Court's order of June 4, 2021, which partially granted Defendants' motion for summary judgment, and rule that when the discovery rule dictates the accrual of copyright claims, as it does here, Plaintiffs are entitled to recover damages dating back to Defendants' first infringements in 2008.

## ARGUMENT

This Court should grant Plaintiffs' petition and allow an interlocutory appeal of the District Court's order of June 4, 2021, which the District Court already certified under 28 U.S.C. 1292(b). For this Court to accept the certified interlocutory appeal, this Court must find that (1) the appeal presents "a controlling question of law"; (2) "as to which there is substantial difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 17 U.S.C. 1292(b). For the reasons explained below, the issue of

whether the three year statute of limitations under 17 U.S.C. § 507(b) bars the recovery of damages incurred more than three-years prior to filing suit when the discovery rule dictates the accrual of a copyright claim, meets all of the 1292(b) requirements, and thus, this petition should be granted.

## I.  WHETHER PLAINTIFFS CAN RECOVER DAMAGES PRIOR TO THE THREE-YEAR LOOKBACK IS A CONTROLLING QUESTION OF LAW

As this Court stated in *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004), "§ 1292(b) appeals were intended … for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d 1251 at 1259 (internal citations omitted). The *McFarlin* court went on to explain that a controlling question of law is one that has "general relevance to other cases in the same area of law." *Id; see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)("the certified issue has precedential value for a large number of cases").

Both of the above circumstances exist here. The issue of how far back a copyright plaintiff can recover damages when, based on the discovery rule, the plaintiff is permitted to bring copyright claims for infringements occurring more than three-years from the commencement of litigation is a pure question of law, squarely in line with the purpose of 1292(b) appeals. This is underscored by the

limited factual background provided above, which makes clear that effectively no facts or evidence relevant to the underlying case – other than the procedural history that ultimately led to the need for this petition – need be considered by this Court in making its determination as to the question presented herein.

Further, this controlling question of law not only has general relevance and precedential value to a large number of copyright infringement cases nationwide, but has specific relevance to this Court, which oversees copyright cases in musical hotbeds Atlanta, Georgia and Miami, Florida. This question's relevance to the music world at-large can be realized simply by the Defendants in this case – Warner Chappell Music, Inc., Artist Publishing Group, and Atlantic Recording Corporation – some of the biggest companies in the music industry, agreeing with Plaintiffs, and without dispute, that the "limitation of damages is a controlling issue of law." Certification Order at 2 (A0003). Of course, the District Court agreed. *Id.*

Because the issue presented in this petition is a pure question of law having relevance and precedential value to other copyright cases, including a multitude of future copyright cases certain to come through this circuit, and because a review of the question presented requires virtually no investigation of the record by this Court, it constitutes a controlling question of law as required by 1292(b), and this Court should permit this appeal.

## II. THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION ON THE DISCOVERY RULE'S IMPACT ON THE THREE-YEAR DAMAGES BAR UNDER 17 U.S.C. 507(b)

"A substantial ground for difference of opinion means … courts espouse different opinions as to the particular question of law, separate and apart from the application of the law to the facts." *In re Trasylol Prod. Liab. Litig*., 2010 WL 2541892, at *2 (S.D. Fla. June 22, 2010)(citing *Grand Lodge of Pa. v. Peters,* 2008 WL 2790237, at *1 (M.D.Fla. July 18, 2008). "A question of law is not contestable if there is 'complete and unequivocal' agreement on that question between the court of appeals and the district court. " *Id.* (citing *McFarlin*, at 1258).

As an initial matter, and as the District Court's Summary Judgment Order expressly provided, "the Eleventh Circuit has not addressed this specific issue." Summary Judgment Order at 7 (A0013). And despite the District Court, in this case, relying on the Second Circuit in *Sohm* in finding that the three-year lookback for damages should be applied despite the discovery rule governing the accrual of Plaintiffs' claims, the same District Court has, in prior cases, relied on Ninth Circuit precedent in finding to the contrary. *See, e.g.*, *Habersham Plantation Corp. v. Molyneux*, 2011 U.S. Dist. LEXIS 117511, at *14 (S.D. Fla. Aug. 19, 2011) (citing *Polar Bear*, 384 F.3d 700, 705–706)("the three-year statute of limitations [under 17 U.S.C. § 507(b)] does not bar the recovery of damages incurred more than three

years prior to the filing of suit if the plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").

Further, notwithstanding the intracircuit discrepancies, as laid out in depth in the introduction section above, there is an ongoing circuit split between the Second Circuit and district courts in the Ninth Circuit and elsewhere regarding the intent and interpretation of *Petrella*, and whether or not the discovery rule acts as an exception to 17 U.S.C. 507(b)'s three-year damages bar.

Both the intracircuit and the federal circuit split of authority clearly evidence the substantial grounds for difference of opinion as to the question presented herein and make this issue ripe for this Court's review.

## III. INTERLOCUTORY REVIEW OF THE THREE-YEAR LOOKBACK FOR DAMAGES UNDER THE DISCOVERY RULE MAY MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION

The question of whether a controlling issue of law may materially advance the termination of the pending litigation is "not a difficult requirement to understand … [i]t means that the resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation. *McFarlin*, at 1259 (internal citations omitted). "In certifying the order," the district judge, the person "in the best position to assess the situation at hand … tell[s] the court of appeals that entertaining the appeal will enhance efficiency and cost-effectiveness in reaching a final

judgment in the case." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1379–80 (11th Cir. 2008).

Here, Plaintiffs have acknowledged, and the Certification Order emphasized, Plaintiffs' indication that the "vast bulk of damages being sought fall outside the three-year lookback period," meaning that "limiting Plaintiffs' recovery to the three years prior to Plaintiffs' filing suit will render the matter no longer practical to pursue." Certification Order at 2 (A0003). Because this matter can essentially be terminated depending on this Court's determination of the issue presented, this interlocutory review may materially advance the ultimate termination of this litigation, and therefore, this Court should permit this appeal.

## CONCLUSION

The District Court has granted the parties' *ore tenus* motion to certify this case for interlocutory appellate review, and now, because the issue raised herein meets the requirements of 28 U.S.C. 1292(b), this Court should grant Plaintiff's petition and hear Plaintiffs' appeal.

Dated: July 1, 2021

Respectfully submitted,

By: /s/ Carlton Talbot
Carlton LP Talbot, Esq.
Carlton LP Talbot Attorney At Law
Fla Bar ID: 0107089
123 NW 23rd St.

Miami, FL 33127
(305) 697-3030
ctesq.consulting@gmail.com


Peter G. Herman
Peter Herman, P.A.
Florida Bar No. 353991
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
(954) 882-1133
service@phpalaw.com

and

Brady F. Williamson
Salzano, Lampert & Wilson, LLP
275 Madison Ave., 35th Floor
New York, NY 10016
Telephone: (646) 863-1883
bwilliamson@slwlawoffices.com

*Attorneys for Plaintiffs/Appellants*
*Music Specialist, Inc. and Sherman*
*Nealy*

# CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1. This document complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) because it contains less than 5,072 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document contains 2623 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010, Times New Roman, and 14-point font.

Dated: July 1, 2021                    By: /s/ Carlton Talbot
                                           Carlton Talbot

## CERTIFICATE OF SERVICE

I, Carlton LP Talbot, do hereby certify that a copy of the foregoing Petition for Permission to Appeal Certified Interlocutory Order Pursuant to 28 U.S.C. 1292(b), and accompanying exhibits, was sent to all counsel for Defendants listed below by electronically mailing the same on July 1, 2021. Furthermore, after receiving a stamped and docketed version of this petition from this Court, I will cause a copy to be sent to the individuals listed below by electronic and regular U.S.mail.

Karen L. Stetson
GRAY ROBINSON, P.A.
Fla. Bar No. 742937
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131
(305) 416-6880
karen.stetson@gray-robinson.com

Jonathan Z. King
COWAN, LIEBOWITZ & LATMAN, P.C.
147 West 47th Street
New York, NY 10036
(212) 790-9238

# APPENDIX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CIV-25474-RAR

SHERMAN NEALY, *et al.,*

     Plaintiffs,

v.

ATLANTIC RECORDING CORP., *et al.*,

     Defendants.

_____/

## CERTIFICATION ORDER PURSUANT TO
## 28 U.S.C. § 1292(b) AND FED. R. CIV. P. 54(b)

**THIS CAUSE** comes before the Court upon the parties' *ore tenus* Motion for Certification

of Appeal ("Motion") made at the Status Conference on June 8, 2021.  Having considered the

Motion and being otherwise fully advised, it is hereby

     **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

### Certification Pursuant to 28 U.S.C. § 1292(b)

     Pursuant to 28 U.S.C. section 1292(b), an interlocutory appeal may be certified when three

elements are present: (1) where the case presents a controlling question of law; (2) where there is

a substantial ground for difference of opinion; and (3) where the appeal will materially advance

the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  A "controlling question of law"

arises where the appellate court can rule on a question of law without having to search deep into

the record to discern the facts of the underlying case.  *See Allapattah Servs., Inc. v. Exxon Corp.*,

333 F.3d 1248, 1252-53 (11th Cir. 2003).

     The Court hereby certifies for immediate appeal its summary judgment determination that,

even where the discovery rule dictates the accrual of a copyright claim, damages in this copyright

action are limited to the three-year lookback period as calculated from the date of the filing of the

Complaint pursuant to the Copyright Act and *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S.

663 (2014).

The extent of recoverable damages is a controlling issue of law in this case and an

immediate appeal from the Order may materially advance the ultimate termination of the litigation.

Plaintiffs have indicated that because the vast bulk of damages being sought fall outside of the

three-year lookback period, limiting Plaintiffs' recovery to the three years prior to Plaintiffs filing

suit will render this matter no longer practical to pursue.  The parties agree that the limitation of

damages is a controlling issue of law, and the Court concurs.  *See, e.g.*, *Profit Point Tax Techns.,*

*Inc. v. DPAD Grp., LLP*, No. 19-cv-698, 2021 WL 1967961, at *3 (W.D. Pa. May 17, 2021) ("A

controlling issue of law is one that will end the litigation," *citing Klinghoffer v. S.N.C. Achille*

*Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), and "may also be found where the issue is serious to the

conduct of the litigation, either practically or legally," *citing Katz v. Carte Balance Corp.*, 496

F.2d 747, 755 (3d Cir. 1974)); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259

(11th Cir. 2004) ("resolution of a controlling legal question would serve to avoid a trial or

otherwise substantially shorten the litigation.").  An issue of law has also been termed controlling

where, as is the case here, "the certified issue has precedential value for a large number of cases."

*Klinghoffer*, 921 F.2d at 24.

Further, a split of authority has developed among district courts on the applicable damages

period, and consequently, there exists substantial grounds for a difference of opinion as

contemplated by section 1292(b).  The Court agrees with Defendants that the Supreme Court's

decision in *Petrella* is binding on this action and that, pursuant to the holding in *Petrella,* the three-

year lookback for damages calculations must be applied despite operation of the discovery rule for

Appendix 0003

accrual purposes.  The Second Circuit adopted this position in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020)—the only Circuit Court, post-*Petrella*, to address the issue.  Plaintiffs, in contrast, urge the Court to adopt the Ninth Circuit's *pre-Petrella* holding in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), which Plaintiffs contend was not affected by *Petrella*.  *See Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC*, No. 20-04085, 2021 WL 566500 (C.D. Cal. Jan. 5, 2021).  Both the Ninth Circuit in *Polar Bear* pre-*Petrella* and the district court in *Starz Entertainment* post-*Petrella* rejected the three-year damages limitation in cases where the discovery rule was applicable.  While the Court disagrees with Plaintiffs, it finds there to be sufficient difference in the case law to warrant review pursuant to section 1292(b).

All the elements having been met, the issue of the three-year lookback period for Plaintiffs' recoverable damages in this copyright action is ripe and appropriate for appellate review.

### Certification Pursuant to Fed. R. Civ. P. 54(b)

Additionally, pursuant to Fed R. Civ. P. 54(b), the Court hereby certifies the Final Judgment in favor of Atlantic Recording Corporation ("Atlantic") [ECF No. 257] as a final judgment and determines that there is no just reason to delay the appeal thereof.  In determining whether an order is certifiable under Rule 54(b), the district court must engage in a two-step analysis.  *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1127 (11th Cir. 2018).  First, the district court "must decide whether the order is both 'final' and a 'judgment.'"  *Id.*  Second, the district court must find "that there is no just reason for delay in permitting the parties to appeal its decision immediately."  *Id.* (quotation omitted).

The summary judgment ruling in favor of Atlantic determined that Plaintiffs could not support their claim of ownership over the musical works registered in the name of Music Specialist

Publishing, including the only musical work Atlantic is alleged to have infringed, "Jam The Box." By dismissing claims relating to "Jam The Box," the judgment completely disposes of all claims against Atlantic and thus constitutes a Final Judgment as to Atlantic.

Rule 54(b) requires a determination that there is "no just reason for delay," taking into account "judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). A court should consider: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975), *overruled in part by Curtiss–Wright*, 446 U.S. 1.

Here, there is no just reason for delay based on the criteria set forth above. The unadjudicated claims all relate to musical compositions other than "Jam The Box," so future developments in this Court will not moot the need for review. There is no possibility that the issue of Plaintiffs' ownership over the composition "Jam The Box" would be the subject of recurrent appellate review. There is no counterclaim which will result in a set-off, and the interests of judicial economy support certification for immediate appeal, particularly in light of the Court's concurrent certification pursuant to section 1292(b) of a controlling question of law regarding the scope of relief available herein and the stay of this matter pending the disposition of appellate review.

Appendix 0005

Accordingly, certification of the Final Judgment in favor of Atlantic as a final judgment is just and appropriate.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 21st day of June, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Appendix 0006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CIV-25474-RAR

SHERMAN NEALY, *et al.,*

      Plaintiffs,

v.

ATLANTIC RECORDING CORP., *et al.*,

      Defendants.

_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court on Magistrate Judge Jacqueline Becerra's Report and Recommendation [ECF No. 224] ("Report"), entered on March 8, 2021. The Report recommends that the Court: (1) deny Defendants' Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts [ECF No. 193]; (2) grant Defendants' Motion to Strike Affidavits of Stevens, Knox, and Baker [ECF No. 194]; (3) grant in part and deny in part Defendant's Motion for Summary Judgment [ECF No. 166]; and (4) deny Plaintiff's Motion for Partial Summary Judgment [ECF No. 175]. *See* Rep. at 2. Both parties filed objections to the Report [ECF Nos. 248 and 249].

The Court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the Report to which objections are made are accorded *de novo* review so long as those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the Report to which no specific objection is made are reviewed only for

clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.,* 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006).

The Court having conducted a *de novo* review of the portions of the Report to which the parties' objected,[1] reviewed the remainder of the Report for clear error, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Report [ECF No. 224] is **AFFIRMED AND ADOPTED** as supplemented herein.

## ANALYSIS

Plaintiffs raise three objections to the Report. First, Plaintiffs contend that Magistrate Judge Becerra erred in finding that Plaintiffs lacked standing to bring a copyright infringement action on behalf of Music Specialist Publishing ("MSP") as to the songs "Jam the Box," "I Know You Love Me," and "Computer Language"[2] (collectively, "MSP-Registered Songs").[3] *See* Pls.' Obj. at 2. Second, Plaintiffs argue that Magistrate Judge Becerra erred in finding that the Supreme Court's holding in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), limits damages to a three-year period prior to the commencement of a copyright suit. *Id.* at 10. And third, Plaintiffs aver that Magistrate Judge Becerra erred in finding that the affidavits of William Stevens, Esq. ("Stevens") and George Knox, Esq. ("Knox") should be stricken. *Id.* at 15.

---

[1] As discussed below, the Court reviews Magistrate Judge Becerra's findings on the motions to strike for clear error even though Plaintiffs have objected to those findings.

[2] For "Computer Language," the copyright registration lists both MSP and Happy Stepchild Music Publ. Corporation as the claimants. *See* Rep. at 18.

[3] Magistrate Judge Becerra's holding also applied to a fourth MSP-registered song, "When I Hear Music," which has since been removed from the case by stipulation of the parties. *See* Pls.' Resp. to Defs. Obj. [ECF No. 255] at 2, n.3. The songs "Fix It In The Mix" and "Freestyle Express" were also removed from the case by stipulation, *see id.* at 2, n.2, so the Court has excluded those songs from its analysis herein.

Defendants also raise three objections to the Report.  First, Defendants argue that they are entitled to summary judgment as to all the songs (not just the MSP-Registered Songs) because Plaintiff has not proven copyright ownership of any of the works at issue.  *See* Defs.' Obj. at 3-8. Second, Defendants contend that Magistrate Judge Becerra should have recommended dismissal of the entire case on statute of limitations grounds.  *Id.* at 10-19.  And third, Defendants argue that they are entitled to summary judgment because they obtained licenses from Tony Butler, who Plaintiffs have admitted is a co-owner of the copyrights in three of the works at issue: "Computer Language," "I Know You Love Me," and "Jam The Box."  *Id.* at 18-21.

The Court will discuss each of the parties' objections in turn.

## I.   *Whether Plaintiffs lack standing to bring suit as to the MSP-Registered Songs*

In the Report, Magistrate Judge Becerra concluded that Plaintiffs Music Specialist, Inc. ("MSI") and Nealy have not established an ownership interest in the copyrights for the MSP-Registered Songs and therefore do not have standing to sue for infringement of those copyrights. *See* Rep. at 26-27.  She reasoned that Plaintiffs are not listed as claimants in the copyright certificates for the MSP-Registered Songs; Plaintiffs only vaguely pleaded that MSP is affiliated with MSI; and there is no evidence in the record to support the allegation that MSP and MSI are affiliated.  *Id.*  Plaintiffs object to this finding and maintain they have standing to bring a copyright infringement suit for the MSP-Registered Songs.  They argue that "the record is replete with evidence and testimony" showing that MSI has been affiliated with MSP since 1984 and "that MSP was a d/b/a of MSI that administered the publishing rights to, or was the publishing arm of, MSI."  Pls.' Obj. at 10.

Under the Copyright Act, "only the legal or beneficial owner of an 'exclusive right' has standing to bring a copyright infringement action in a United States court."  *Saregama India Ltd.*

Appendix 0009

*v. Mosley*, 635 F.3d 1284, 1290-91 (11th Cir. 2011) (citing 17 U.S.C. § 501(b)).[4]  As the parties asserting a copyright infringement claim, Plaintiffs bear the burden of proving standing by demonstrating their ownership of the subject copyrights.  *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017); *Cramer v. Cecil Baker & Partners, Inc.*, No. 19-01503, 2019 WL 2774181, at *2 (E.D. Pa. July 1, 2019) (citing *Clarity Software, LLC v. Fin. Indep. Grp.*, 51 F. Supp. 3d 577, 587 n.12 (W.D. Pa. 2014)).  When the nonmoving party bears the burden of proof, "the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against [it]."  *Maxi-Taxi Of Fla., Inc. v. Lee Cty. Port Auth.*, 301 F. App'x 881, 885 (11th Cir. 2008).

Here, the Court agrees with Magistrate Judge Becerra that Plaintiffs' evidence is insufficient to establish their ownership of the MSP-Registered Songs.  Plaintiffs cite to the deposition testimony of MSI legal consultant Jonathan Black, who testified that during his time doing "some publishing administration work" for MSI, including setting up MSI's music publishing catalog, he was responsible for preparing the copyright registrations and the corresponding songwriter agreements executed by Tony Butler for the MSP-registered songs "I Know You Love Me" and "Jam the Box."  *See* Pls.' Obj. at 3-4.  For "Jam the Box" and "Computer Language," Plaintiffs also point to the fact that the Publisher Number indicated on the Copyright Office's website registration is "Music Specialists MSI-109," which Plaintiffs claim "is the three-letter symbol used by the Copyright Office to identify MSI and its registrations."  *Id.* at 5.  Further,

---

[4]  A "beneficial owner" typically refers to an author who has parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees. *See Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014).

Appendix 0010

Plaintiffs rely on the fact that an MSI individual is listed as the agent for correspondence in the "Jam the Box" and "I Know You Love Me" copyright registration certificates. *Id.* at 6.

Additionally, Plaintiffs cite to deposition testimony from Nealy, Black, and recording artist Garfield Baker. *Id.* at 6-7. Baker testified that "maybe Music Specialist Publishing was some kind of d/b/a or whatever of Music Specialist, Inc., but I understood that to be the publishing arm of the Music Specialist Corp." *Id.* Black testified "I'm not certain about this because that wasn't under my direction, I believe that Music Specialist Publishing was a d/b/a of Music Specialist, Inc." *Id.* at 9. Nealy testified that MSP was a separately incorporated legal entity from MSI, but then asserted that MSP was "a d/b/a" for MSI. *See* Dep. of Sherman Nealy [ECF No. 176-15] at 135:1-17, 234:18-25, 235:1-9.

At best, Plaintiffs' evidence suggests an affiliation between MSI and MSP, which is not enough to satisfy the standing requirement for a copyright infringement suit. For example, in *Wallert v. Atlan*, the plaintiff brought a copyright infringement claim for a recording he allegedly composed and produced. 141 F. Supp. 3d 258, 264 (S.D.N.Y. 2015). The copyright registration for the recording listed as a copyright claimant a company named Moonstruck. *Id.* at 276. The plaintiff argued that he had standing because, among other reasons, he was the sole owner of Moonstruck. *Id.* The court disagreed that this was sufficient to confer standing, holding that

> the . . . claim that Wallert, as owner of Moonstruck, is also the owner of Moonstruck's copyright ownership of The Rock composition, is legally wrong. A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. Therefore, an individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets.

*Id.* at 276-77 (internal quotations and citations omitted).

Similarly, in *Big E. Ent., Inc. v. Zomba Enterprises, Inc.*, the court held that plaintiff Big East Entertainment did not have standing to sue for infringement of copyrights registered in the

Appendix 0011

name of another company, despite the plaintiff's arguments that the companies had the same owner and had ultimately merged.  453 F. Supp. 2d 788, 796-98 (S.D.N.Y. 2006), aff'd, *Big E. Ent., Inc. v. Zomba Enterprises, Inc.*, 259 F. App'x 413 (2d Cir. 2008).  The court reasoned that the copyright registration for the compositions at issue was in the name of B-Boy Records; there was no assignment of copyright from B-Boy Records to plaintiff; and there was no evidence to support plaintiff's merger allegation.  *Id.*  The court noted that plaintiff's owner's assertions, which were "contradictory and unsupported by documentary evidence," were insufficient to establish standing. *Id.* at 798.

Although a d/b/a relationship may be sufficient for standing in some circumstances, *see, e.g., Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 16-04587, 2017 WL 2729584, at *4 (C.D. Cal. May 1, 2017), Plaintiffs have not presented any documentary evidence of such a relationship.  The only record evidence Plaintiffs have cited to support their position that MSP was a d/b/a of MSI is speculative testimony from Garfield and Black, coupled with Nealy's uncorroborated and contradictory testimony.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact."); *Cantrell v. Delta Airlines, Inc.*, 2 F. Supp. 2d 1460, 1463 (N.D. Ga. 1998) ("Plaintiff's self-contradictory testimony does not create an issue of fact necessary to defeat Defendant's motion for summary judgment.") (citing *Van T. Junkins and Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984)).  Indeed, not only is Nealy's deposition testimony internally inconsistent, but his testimony that MSP was a d/b/a for MSI also conflicts with the affidavit he filed in support of his motion to intervene in a separate case.  There, Nealy states that "MSI is affiliated with Music Specialist Publishing."  Aff. of Sherman Nealy [ECF No. 212-1], *Baker v. Warner/Chappell Music, Inc.*, No. 14-22403 (S.D. Fla. June 8, 2017); *Tang v. Jinro America, Inc.*, No. 03-06477, 2005 WL 2548267, at * 4 (E.D.N.Y. 2005) ("In his

Appendix 0012

deposition testimony, Plaintiff states both that he signed the agreement, and that he did not sign the agreement.  Such inconsistency is not sufficient to create a 'genuinely disputed' issue of fact if only because a statement against [one's] interest trumps one which is self-serving.").[5]

Without establishing that MSP had no legal existence apart from MSI and was no more than an assumed name, Plaintiffs cannot receive the benefit of a presumption of legal ownership based on the copyright registrations for the MSP-Registered Songs.  *See Architectural Body Rsch. Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 642 (S.D.N.Y. 2018) ("If the plaintiff is not named on the registration as the owner, it has the additional burden of proving valid chain of title.") (internal quotation omitted).  The Court therefore finds that Plaintiffs have not shown ownership of the MSP-Registered Songs, which Plaintiffs must establish both for standing and as an element of their copyright infringement case.  *See Urbont v. Sony Music Ent.*, 831 F.3d 80, 88, n.6 (2d Cir. 2016).

## II. *Whether Petrella limits damages to the three-year period prior to the lawsuit*

Plaintiffs next object to Magistrate Judge Becerra's finding that Plaintiffs are limited to damages incurred during the three years prior to filing their lawsuit.  Plaintiffs insist that the language in *Petrella* suggesting a strict three-year damages bar is dicta and that the discovery rule operates as an exception to the general rule barring recovery for infringements prior to the three-year window.  *See* Pls.' Obj. at 10-15.

The Court disagrees.  Although the Eleventh Circuit has not addressed this specific issue, the Court finds—as the Second Circuit held in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir.

---

[5]  Plaintiffs indicate that "Defendants *themselves* asserted, as an undisputed fact, that DMG negotiated the license to use 'Jam the Box' as an interpolation in 'In the Ayer' with an attorney representing Butler, 321 Music and 'Music Specialist,' *a d/b/a* of MSI."  *Id.* at 5 (quoting [ECF No. 167] ¶ 38).  However, "allegations in a party's statement of material facts are themselves not evidence."  *EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 812 (11th Cir. 2017).

Appendix 0013

2020)—that even where the discovery rule dictates the accrual of a copyright infringement claim, a three-year lookback period from the time a suit is filed must be used to determine the extent of the relief available.  In *Petrella*, the Supreme Court explicitly delimited damages to the three years prior to the filing of a copyright infringement action.  *Petrella*, 572 U.S. at 671-72, 77.  As the Second Circuit persuasively reasoned in *Sohm*, the *Petrella* Court's holding that laches was inapplicable to actions under the Copyright Act was partially based "on the conclusion that the statute 'itself takes account of the delay' by limiting damages to the three years prior to when suit is filed."  959 F.3d at 52 (quoting *Petrella*, 572 U.S. at 677).  The three-year limitation on damages was thus an integral part of the result in *Petrella* and is binding precedent—not mere dicta as Plaintiffs contend.  *Id.* ("We are bound 'not only [by] the result [of a Supreme Court opinion,] but also those portions of the opinion necessary to that result.") (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996)).  Accordingly, Magistrate Judge Becerra correctly concluded that Plaintiffs' potential damages in this case are limited to the three-year period prior to Plaintiffs filing suit.

### III.   *Whether the Knox and Stevens Affidavits were appropriately stricken*

The Court reviews Magistrate Judge Becerra's striking of the Knox and Stevens affidavits for clear error.  *See Moore v. M/V Sunny USA*, No. 18-81181, 2019 WL 7207109, at *5 (S.D. Fla. Dec. 27, 2019), aff'd, No. 20-10092, 2021 WL 613696 (11th Cir. Feb. 17, 2021) ("A motion to strike . . . is a nondispositive motion that falls within [Federal Rule of Civil Procedure] 72's clearly erroneous or contrary to law standard.") (quotation omitted).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Pullman-Standard v. Swint*, 456 U.S. 273, 284 n.14 (1982) (quoting *United*

*States v. United States Gypsum Co.*, 333 U.S. 365, 395 (1948)); *see also United States v. Brown*, 947 F.3d 655, 673 (11th Cir. 2020) (citation omitted) ("[W]e have explained that a district court's factual finding is clearly erroneous only if it leaves us with 'a definite and firm conviction that a mistake has been committed.'"). "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted). As courts in this Circuit have expressly noted, "a magistrate judge is afforded broad discretion in issuing nondispositive pretrial orders related to discovery." *Triolo v. United States*, No. 18-91934, 2019 WL 5704659, at *1 (M.D. Fla. Nov. 5, 2019) (citation and internal quotations omitted); *see also Sartori v. United States Army*, No. 17-679, 2019 WL 1116781, at *1 (N.D. Fla. Mar. 9, 2019) (citation omitted) ("[W]hen reviewing a non-dispositive pretrial discovery order, the court affords 'broad discretion' to the magistrate judge."). Thus, "[i]t is seldom easy to establish clear error." *Brown*, 947 F.3d at 673 (citation and internal quotation omitted); *see also Nat'l Ass'n for the Advancement of Colored People v. Fla. Dep't of Corrs.*, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000) ("The standard for overturning a Magistrate Judge's Order is a very difficult one to meet.").

The Court is not persuaded that Magistrate Judge Becerra's striking of the Knox and Stevens affidavits was clearly erroneous. The Court agrees with Magistrate Judge Becerra that Plaintiffs' failure to disclose Stevens and failure to disclose Knox's knowledge of the copyright ownership and transfer agreements are neither substantially justified nor harmless. *See Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) ("[W]hen a party fails to comply with [Federal Rule of Civil Procedure] 26, the district court does not abuse its discretion by striking an affidavit submitted in opposition to summary judgment, pursuant to Rule 37(c)."); *Pete's Towing Co. v. City of Tampa, Fla.*, 378 F. App'x 917, 919–20 (11th Cir. 2010) (upholding district

Appendix 0015

court's order striking portions of a witness affidavit because it "included allegations that had not been previously disclosed to Defendants in response to discovery requests.").

### IV. Whether Plaintiffs failed to establish ownership because they did not produce written transfer agreements

Defendants contend that Magistrate Judge Becerra erred by not entering summary judgment in their favor as to all the songs at issue because Plaintiffs cannot establish ownership without producing written agreements showing assignment of the musical works from author Tony Butler. *See* Defs.' Obj. at 4. Defendants cite to Section 204(a) of the Copyright Act, which provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

Because the Court agrees with Magistrate Judge Becerra that Plaintiffs lack standing to sue as to the MSP-Registered Songs—and the songs "When I Hear Music," "Freestyle Express," and "Fix it in the Mix," were removed from the case by stipulation—the only remaining songs are "The Party Has Begun" and "Lookout Weekend." The copyright registrations for "The Party Has Begun" and "Lookout Weekend" indicate that these musical works were transferred from Butler to MSI by assignment. *See* Pls.' Statement of Facts, Ex. J [ECF No. 176-10]. Additionally, Nealy testified that during the relevant time period, there were songwriter agreements with Butler whereby Butler would have given MSI ownership of Butler's songs. *Id.*, Ex. O [ECF No. 176-15] ("Nealy Dep.") at 41. And another songwriter, Baker, recalled having signed songwriter agreements with MSI. *Id.*, Ex. D [ECF No. 176-4] at 4-5.

The Court agrees with Magistrate Judge Becerra that although Plaintiffs' evidence of ownership as to these remaining songs is thin, it is sufficient to withstand a motion for summary judgment. Further, considering there is evidence in the record that a writing was used to effectuate

the transfer from Butler to MSI, Plaintiffs' failure to produce the written agreement is not fatal at this stage.  *See Stillwater Ltd. v. Basilotta*, No. 16-01895, 2019 WL 1960277, at *7 (C.D. Cal. Mar. 6, 2019) ("Unlike in cases where the dispute centered around the failure to transfer copyrights via a writing pursuant to § 204(a), here, there is evidence that a writing was used to effectuate the transfer of the copyrights . . . , but that writing has been lost.  Under the circumstances, the court finds that [Plaintiff] has shown title of ownership for purposes of standing."); *Caravan, Ltd. v. Karin Stevens, Inc.*, No. 00-07664, 2001 WL 1426698, at *1 (S.D.N.Y. Nov. 14, 2001) ("The purpose of section 204(a) . . . is to protect copyright owners from persons mistakenly or fraudulently claiming that a copyright was transferred orally, not to enable third parties to infringe on transferred copyrights whenever there is no formal writing effecting the transfer.").

### V.   *Whether Plaintiffs' claims are barred by the statute of limitations*

In the Report, Magistrate Judge Becerra concluded that the undisputed facts do not support a finding that Plaintiffs' claims are barred by the three-year statute of limitations.  Defendants contend that in reaching this conclusion, Magistrate Judge Becerra incorrectly applied the "express repudiation" standard that the Eleventh Circuit rejected in *Webster v. Dean Guitars*, 955 F.3d 1270 (11th Cir. 2020), by which a claim accrues when there is an express repudiation of ownership by one party against the other.  Defs.' Obj. at 9-10.  Defendants argue that under the correct standard set by *Webster*—that "an ownership claim accrues when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights," 955 F.3d at 1276—Plaintiffs' claims are time-barred.

Defendants insist that the following undisputed facts establish that Plaintiff had both actual and constructive knowledge of their claims.  First, Defendants cite a June 9, 2008 meeting between Nealy and third-party Robert Crane where Nealy objected to Crane's distribution of the

Appendix 0017

compositions at issue in this case ("Crane Meeting").  Defs.' Obj. at 12.  Defendants argue that at

the Crane Meeting, Nealy learned that Butler had licensed the works to Crane's companies, and

that Plaintiffs' actual notice of Butler's adverse ownership claim establishes that Plaintiffs' claims

in this case are time-barred.  *Id.*  Second, Defendants argue that Plaintiffs had constructive notice

of their claims based on the widespread distribution of several of the works at issue in this case.

*Id.* at 14-15.  Third, Defendants argue that the fact that Plaintiffs were not consistently receiving

royalties for the songs at issue in this case should have caused Plaintiffs to investigate violations

of their ownership rights.  *Id.* at 16-17.   Fourth, Defendants argue that Plaintiffs should have

known about adverse ownership claims based on Broadcast Music, Inc.'s ("BMI") public

records—which showed Warner Chappell was claiming to administer the songs—and a September

2015 BMI royalty statement that Nealy received for the song "Fix It In The Mix," which identified

Warner Chappell as administrator.  *Id.* at 16-18.

As an initial matter, the Court disagrees with Defendants that Magistrate Judge Becerra

applied the "express repudiation" standard rejected in *Webster*.  Magistrate Judge Becerra analyzed

when Plaintiffs knew or should have known that Defendants were challenging their ownership of

the musical works at issue.  She considered the Crane Meeting and found that *Crane's* challenge

to Plaintiffs' ownership did not necessarily put Plaintiffs on notice that *the Defendants in this case*

were challenging their ownership rights.  *See* Rep. at 38.  She also analyzed Defendants arguments

regarding widespread dissemination, royalties, and the BMI statement and determined that

"reasonable minds could differ on the inferences arising from [the] undisputed facts, namely

whether Nealy had reason to know that Defendants were infringing."  *Id.* at 38-41.  In reaching

this conclusion, Magistrate Judge Becerra took into account that Plaintiff was incarcerated from

March 1989 to March 2008 and then again from February 2012 to September 2015.  She reasoned

that the "should have learned" analysis involves considering "a reasonably prudent person in Plaintiff's position." *Id.* at 40 (citing *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1355 (S.D. Fla. 2014)); *see also On Top Recs. Corp. v. Sunflower Ent. Co.*, No. 15-22664, 2015 WL 13264196, at *3 (S.D. Fla. Oct. 28, 2015) ("In infringement cases, 'should have learned' means whether a reasonably prudent person *in Plaintiff's position* would have been aware of the alleged infringement.") (emphasis added and internal quotations omitted).  The Court agrees with Magistrate Judge Becerra's analysis and therefore overrules Defendants' objection that they are entitled to summary judgment on statute of limitations grounds.

## VI.  Whether Defendants are entitled to summary judgment because they obtained licenses from Butler

Defendants' final objection is that they are immune from suit by Plaintiffs as to the songs "Computer Language," "I Know You Love Me," and "Jam the Box" because Plaintiffs admitted that Butler is a co-owner of these works and Defendants obtained licenses from Butler.  *See* Defs.' Obj. at 19.  As discussed above, the Court finds that Plaintiffs lack standing to bring suit with respect to these MSP-Registered Songs.  It is therefore unnecessary for the Court to reach this final argument advanced by Defendants.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 224] is **AFFIRMED AND ADOPTED** as supplemented herein.

2.  Defendants' Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts [ECF No. 193] is **DENIED**.

3.  Defendants' Motion to Strike Affidavits of Stevens, Knox, and Baker [ECF No. 194] is **GRANTED**.

Appendix 0019

4.  Defendant's Motion for Summary Judgment [ECF No. 166] is **GRANTED IN PART AND DENIED IN PART** as summarized below.

    a.  Because Plaintiffs have not established ownership of the MSP-Registered Song "Jam The Box"—the only copyrighted work that Plaintiffs allege Atlantic Recording Corporation exploited—Defendant Atlantic Recording Corporation is entitled to final summary judgment as to all claims against Defendant Atlantic Recording Corporation in this matter.  The Court shall enter a judgment as to Atlantic Recording Corporation by separate order.

    b.  Defendants Warner Chappell Music, Inc. and Artist Publishing Group, LLC, are entitled to summary judgment as to all claims with respect to each of the following musical compositions and/or sound recordings: "Jam The Box," "I Know You Love Me," and "Computer Language."

    c.  As to the remaining compositions, "Lookout Weekend," and "Party Has Begun," Plaintiffs' damages are limited to the time period commencing on December 28, 2015.

5.  Plaintiff's Motion for Partial Summary Judgment [ECF No. 175] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 4th day of June, 2021.

 

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Appendix 0020

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-25474-RAR

MUSIC SPECIALIST, INC., a Florida
Corporation, and
SHERMAN NEALY, an Individual,
      Plaintiffs,

v.

ATLANTIC RECORDING CORP., a Delaware
Corporation, WARNER/CHAPPELL
MUSIC, INC., a Delaware Corporation,
ARTIST PUBLISHING GROUP, L.L.C., a
Delaware Limited Liability Company
      Defendants.

_____/

## REPORT AND RECOMMENDATION[1] ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS TO STRIKE

**THIS CAUSE** came before the Court on: (1) Defendants Atlantic Recording Corporation

("Atlantic"), Warner Chappell Music, Inc. ("Warner") and Artist Publishing Group, LLC's

("Artist") (collectively, "Defendants") Motion for Summary Judgement, ECF No. [166]; (2)

Plaintiffs Music Specialist, Inc. ("MSI") and Sherman Nealy's ("Nealy") (collectively,

"Plaintiffs") Motion for Partial Summary Judgment and Memorandum of Law, ECF No. [175];

(3) Defendants' Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts,

ECF No. [185]; and (4) Defendants' Motion to Strike the Affidavits of William Stevens

---

[1] On October 27, 2020, United States District Judge Rodolfo Ruiz referred Plaintiffs' Motion for Partial Summary Judgement, ECF No. [165], and Defendants' Motion for Summary Judgement to the undersigned. ECF No. [169]. On December 9, 2020, the case was referred to the undersigned "for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters." ECF No. [196].

1

("Stevens"), ECF No. [185-7], George Knox ("Knox"), ECF No. [185-1], and Garfield Baker ("Baker"), ECF No. [176-12].

As to the Motions for Summary Judgment, both parties filed Statements of Undisputed Material Facts in Support of their respective Motions for Summary Judgment. ECF Nos. [167], [176]. Defendants filed a Response to Plaintiffs' Motion for Partial Summary Judgment, ECF No. [182], and a Response to Plaintiffs' Statement of Material Facts, ECF No. [183]. Plaintiffs also filed their Opposition to Defendants' Motion for Summary Judgment, ECF No. [184], and a Statement of Material Facts in Opposition including several additional facts (the "Additional Facts"). ECF No. [185]. Both parties filed a Reply. ECF Nos. [190], [191]. Defendants then filed their Response to Plaintiffs' Additional Facts. ECF No. [192].

Defendants also filed two motions to strike. The first is a Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts. ECF No. [193]. Plaintiffs filed their Opposition, ECF No. [199], and Defendants filed a Reply. ECF No. [203]. The second is a Motion to Strike the Affidavits of William Stevens ("Stevens Affidavit"), George Knox ("Knox Affidavit") and Garfield Baker ("Baker Affidavit"). ECF No. [194]. Plaintiffs filed their Opposition, ECF No. [200], and Defendants filed a Reply. ECF No. [204].

For the reasons set forth below, it is hereby:

**ORDERED** that Defendants' Motions to Strike Plaintiffs' Response to Defendants' Statement of Material Facts, ECF No. [193], be **DENIED**;

**ORDERED that** Defendants' Motions to Strike the following Affidavits of Stevens, Knox and Baker, ECF No. [194], be **GRANTED**;

**RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. [166], be **GRANTED IN PART** AND **DENIED IN PART**; and

**RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. [175], be **DENIED**.

2

## I.     BACKGROUND AND THE INSTANT MOTIONS

This case concerns copyright infringement of eight musical works: (1) "Fix It in the Mix,"
(2) "Freestyle Express," (3) "When I Hear Music," (4) "Computer Language," (5) "I Know You
Love Me," (6) "Jam the Box," (7) "Lookout Weekend," and (8) "The Party Has Begun"
(collectively, the "Subject Musical Works").  ECF No. [176] ¶ 7.  Plaintiffs Nealy and MSI allege
that they own the Subject Musical Works as evidenced from the copyright registrations that list
them as the owners.  *See* ECF No [176-10].  They allege that the Subject Musical Works were
recorded over thirty-five years ago at the MSI Studio and that "as each song was written, the author
of said composition executed a songwriter agreement pertaining to the compositions, which
assigned the copyrights in the compositions controlled by them as songwriters" to MSI and Music
Specialist Publishing ("MSP").  *Id.* ¶¶ 3, 6–10.

Defendants counter that they have licenses from Tony Butler ("Butler"), the author of the
Subject Musical Works, for the use of the works.  In February 2008, Atlantic obtained a license
from Butler and his company, 321 Music, LLC ("321 Music"), to use portions of "Jam the Box"
as an interpolation in the musical composition "In the Ayer" embodying the performance of the
recording artist publicly known as Flo Rida.  ECF No. [167] ¶ 38.  On July 25, 2008, Artist and
Warner entered into an agreement with Butler and 321 Music, whereby Artist and Warner became
the exclusive administrators of the music publishing rights for the Subject Musical Works and
were transferred the rights to "grant licenses and collect royalties on behalf of th[e] writers and
publishers shares" in the Subject Musical Works.  ECF No. [176] ¶ 27.

On December 28, 2018, Plaintiffs filed their initial Complaint.  ECF No. [1].  Plaintiffs
were permitted to amend that Complaint three times.  ECF Nos. [42], [63], [74], [145].  In their
Third Amended Complaint, the operative pleading at hand, Plaintiffs alleged damages from

copyright infringement and sought injunctive relief and damages.  ECF No. [74] at 3.  Specifically, they allege copyright infringement against Atlantic (Count I); copyright infringement against Artist and Warner (Count II); and contributory copyright infringement against Warner and Artist (Count III).  *Id.* ¶¶ 95–134.

Defendants filed their Motion for Summary Judgment on October 26, 2020 alleging three independent grounds for dismissal.  ECF No. [166] at 2.  First, Defendants state that Plaintiffs cannot prove that they own the Subject Musical Works.  *Id.*  Although Plaintiffs rely on the presumption of validity that attached to their copyright registrations, Defendants argue that the presumption is rebuttable and that there is ample evidence to rebut that presumption.  *Id.* at 12–28.  Defendants argue that Plaintiffs have been unable to produce a single document that evidences that the author(s) of the Subject Musical Works assigned the rights to the Subject Musical Works to Plaintiffs.  Instead, Defendants argue that Plaintiffs present "contradictory and incoherent" testimony "that not only fails to establish ownership of any copyright, but affirmatively disproves it."  *Id.* at 12.  Second, Defendants state that Butler is, at minimum, a co-owner of the songs and had the right to use or license them to Defendants.  *Id.* at 28–29.  Finally, Defendants state that Plaintiffs' claims are nevertheless barred by the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b), because Plaintiffs knew (or should have known) that the copyright ownership rights were being violated well before the three years prior to filing this suit.  *Id.* at 30–49.

Plaintiffs countered that Defendants fail to rebut the presumption of validity of their copyright registrations, which constitute *prima facie* evidence of their ownership and of the information provided on the face of the copyright registration certificates.  ECF No. [184] at 18.  Thus, it is not necessary to produce any written agreements evidencing any transfer of ownership to Plaintiffs of the Subject Musical Works.  *Id.* at 22–30.  As to the argument that their claims are

Appendix 0024

untimely, Plaintiffs argue that Plaintiff Nealy "did not become aware of the Defendants' infringements, and under his circumstances, could not have become aware of the Defendants' infringements, until January 2016" which is within the three-years statute of limitations, considering he filed suit on December 28, 2018.  ECF Nos. [1]; [184] at 36.

Plaintiffs also filed a Motion for Partial Summary Judgment arguing that summary judgment should be entered in their favor as they are the owners of the copyrights to the Subject Musical Works and there is no dispute that Defendants are using, and thereby infringing, on their rights.  Specifically, they argue that the copyright registrations of the Subject Musical Works are evidence of their ownership and because they have never transferred their ownership to Butler or any third party, the rights to the works continue to exclusively reside with them.  ECF No. [175] at 8.  Further, Plaintiffs argue that 17 U.S.C. § 507(b) does not bar their recovery for damages incurred more than three years prior to the filing of this lawsuit as they were unaware of that the Defendants were infringing their works and that their lack of knowledge was reasonable under the circumstances.  *Id.* at 13.

## II.   MOTIONS TO STRIKE

Before considering the Motions for Summary Judgement, the undersigned must first consider the Motions to Strike filed by Defendants—the Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Fact, ECF No. [193], and the Motion to Strike Plaintiffs' Affidavits of Stevens, Knox and Baker, ECF No. [194]—as the undersigned's disposition of these two motions bears on the Motions for Summary Judgment.

### A.  The Motion to Strike Plaintiffs' Response To Defendants' Statement Of Material Facts Is DENIED.

Defendants filed a Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Fact, ECF No. [185], for failure to comply with Southern District of Florida Local Rule

Appendix 0025

56.1.  ECF No. [193].  Pursuant to Local Rule 56.1, "[a] motion for summary judgment and the opposition to it shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts."  Local Rule 56.1(a)(1).  "An opponent's Statement of Material Facts shall clearly challenge any purported material fact" that is "genuinely in dispute."  Local Rule 56.1 (a)(2).  In the opponent's Statement of Material Facts, the opponent "shall use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed'" and for any disputed facts, "the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute."  Local Rule 56.1 (2)(B)–(C).

Here, Defendants argue that thirty-two out of eighty-eight of Plaintiffs' responses to Defendants' Statement of Material Facts did not adhere to the form specified by the Local Rule. ECF No. [193] ¶ 3.  Specifically, these responses state that the fact is "undisputed," but go on to "add argument, additional purported facts, citations of record evidence and legal authorities, all said to be 'for the sake of context.'"  *Id.*  Defendants argue that this is a failure to comply with Local Rule 56.1 as it "defeat[s] the rule's purposes of imparting clarity and simplifying the Court's review" and "[m]oreover, there is no procedure for Defendants to respond to Plaintiffs' violation of the Rule in appending additional argument and evidence to facts Plaintiffs concede are undisputed."  *Id.* ¶¶ 4–5.

Plaintiffs state that they have complied with the Local Rule 56.1 because, while there might not be a provision in the Local Rule for a party to include citations of evidence when the facts are undisputed, Plaintiffs argue that the Local Rule does not expressly disallow it.  ECF No. [199] at 4.  Also, Plaintiffs counter that they are not defeating the Rule's purpose of imparting clarity and simplifying the Court's review; instead their responses are "wholly necessary for this Court to make a meaningful determination" as to whether such facts are in dispute.  *Id.*  Plaintiffs cite to

Appendix 0026

*Silverstein v. Boehringer Ingelheim Pharms.*, 2020 WL 6110909 (S.D. Fla. Oct. 7, 2020), to support their position that the Court should consider these clarifying facts.  In *Silverstein*, both parties submitted in their responses to the statement of undisputed facts additional facts that clarify, limit, or contextualize the other side's proposed facts.  2020 WL 6110909, at *5.  The Court in *Silverstein* stated that "[d]espite the parties' non-compliance with Local Rule 56.1, to the extent the additional facts are material and supported by evidence in the record, I consider them."  *Id.*

The Court finds that the undisputed facts do contain argument and characterizations which would have been better addressed in the "Additional Facts" section.  Local Rule 56.1(b)(3) allows parties to respond to the "Additional Facts" section of the opposition to the statement of material facts, but not to the responses to the statement of material facts.  Alternatively, these characterizations should have been limited to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, where they may also be found in the instant case.  *See* ECF No. [184].  However, the Court has broad discretion in the case of non-compliance, and despite the violation of the Local Rule, the Court was able to review the matter and consider those additional facts that are material and supported by evidence of record.  *See* Local Rule 56.1(d); *Silverstein*, 2020 WL 6110909, at *5.  As such, the Defendants' Motion to Strike Plaintiffs' Responses to Defendants' Statement of Material Facts, ECF No. [193], is **DENIED**.

### B.  The Motion To Strike The Stevens Affidavits, The Knox Affidavit And The Baker Affidavit, ECF No. [194], Is GRANTED.

Defendants filed a Motion to Strike the Stevens Affidavit, ECF No. [185-7], the Knox Affidavit, ECF No. [185-1], and the Baker Affidavit, ECF No. [176-12].  ECF No. [194].  Defendants argue that "none of these witnesses was previously identified as having knowledge of the matters stated in their [a]ffidavits, and [] Stevens was not identified at all" in either Plaintiffs'

Appendix 0027

Initial Disclosures from March 15, 2019 or the Amended Initial Disclosures dated March 10, 2020

*Id.* at 1.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), parties must provide in their initial disclosures "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."   If a party "learns that in some material respect the disclosure or response is incomplete or incorrect," then they have an ongoing duty under Federal Rule of Civil Procedure 26(e)(1)(A) to supplement their initial disclosures.

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Federal Rule of Civil Procedure 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (affirming the District Court's striking of affidavits submitted in opposition to summary judgment when the deadline for discovery had passed and affiants were not listed on the Plaintiffs' initial disclosures and there was no attempt to supplement the disclosures); *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) (because the plaintiff failed to amend her discovery disclosures to identify her witness, the magistrate judge did not abuse his discretion in striking her witness's affidavit).  The Federal Rules of Civil Procedure also prohibit proffering a previously disclosed witness to testify on a subject matter that was not previously disclosed. *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017) (failure to include a description of the witness's discoverable information was not excusable); *Zuniga v. Jacobs*, No. 18-22303, 2020 WL 168106 (S.D. Fla. Jan. 13, 2020) (striking

8

an affidavit submitted in opposition to summary judgment where the witness had been previously identified but his knowledge on a newly asserted defense was not identified.

"The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted). In making this determination, courts are to consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (quoting *Berryman–Dages v. City of Gainesville Fla.*, No. 1:10cv177–MP–GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012)).

## 1. *The Stevens Affidavit*

The Stevens Affidavit, executed on November 15, 2020, avers that he worked as an attorney for MSI, at the behest of Nealy, from approximately 1983 to 1986. ECF No. [185-7] at 1. Stevens explains that he "was personally responsible for preparing the recording artist contracts and producer contracts that were signed by the recording artists and producers" at MSI. *Id.* He states that Butler "was an engineer, producer, and songwriter for MSI, and as such, executed a recording artist and producer contract with MSI." *Id.* Stevens also claims that he was personally responsible for completing the copyright registrations for "Party Has Begun," "Lookout Weekend," "Freestyle Express," and "When I Hear Music." *Id.* Importantly, Stevens also states that "[t]he representations on the face of the copyright registration certificates accurately reflect

9

the fact that Butler assigned his rights in all of the songs authored by him to MSI and [MSP] (the publishing arm of MSI) as work(s) for hire pursuant to the recording artist and producer agreements [Stevens] prepared and [Butler] executed." *Id.*

Defendants argue that the Stevens Affidavit should be stricken pursuant Federal Rule of Civil Procedure 37.  ECF No. [194] at 5.  Specifically, Stevens was never disclosed at all in Plaintiffs in Plaintiffs' Rule 26(a) disclosures.  Indeed, the first time Defendants had any notice that Stevens had any relevant information regarding the matter was when the Stevens Affidavit was submitted in Opposition to Defendants' Motion for Summary Judgment.  *Id.*  Moreover, Defendants argue that the Stevens Affidavit purports to contradict sworn testimony Plaintiffs have given during discovery" that goes to the heart of the matter—the validity of the copyright registrations for the songs at issue." *Id.* at 2.  Defendants point to Nealy's deposition where he testified that Jonathan Black had prepared all MSI's copyright registrations and that Black was responsible for prepared the transfer agreements for MSI.  *Id.* at 2–3 (citing ECF No. [176-15] at 33, 41–42, 44, 66, 77).  Later, when Black contradicted Nealy's statements by testifying that he did not prepare the copyright registrations for six of the musical works in question, no mention was made of Stevens.  ECF No. [176-5] at 13–20.  Although Blacks' testimony was on June 25, 2020, the first time that Stevens was mentioned by Plaintiffs was November 16, 2020 when his affidavit was filed with the Opposition.  Indeed, given that the discovery cutoff was August 31, 2020, Plaintiffs had two months after the Black testimony to have located and identified Stevens and chose not to do so.  Given that, Defendants argue that this late disclosure is not substantially justified nor is it harmless as they were not afforded any opportunity to depose Stevens or otherwise prepare for this new evidence.

10

In response, Plaintiffs explain that they "had no contact with Stevens whatsoever, had no idea as to the extent of Stevens' relevant knowledge, and had no intention of using Stevens or any of his testimony to support Plaintiffs' claims or defenses" as of the time that Plaintiffs provided their Initial Disclosures and Amended Initial Disclosures.  ECF No. [200] at 4.  Plaintiff state that they "fully intended to rely on the testimony of Black as it pertained to the songwriter agreements" and on the presumption of ownership based on the copyright registration certificates. *Id.* at 5. However, they initiated an additional investigation after reading Defendants' Motion for Summary Judgment filed on October 26, 2020.  *Id.*  They also state that any failure to comply with Federal Rule of Civil Procedure 26(a) or (e) was substantially justified or harmless because Stevens' name appears on the copyright registration certificates as the individual to whom correspondence regarding the application should be sent for  "Lookout Weekend," "Freestyle Express," "Party Has Begun," and "When I Hear Music."  *Id.* at 6.  Defendants could have, they contend, but never did ask any questions about Stevens' role during the discovery stage.  *Id.*  Even though Defendants have concerns because they were unable to depose Stevens, Plaintiffs state that they are in a similar position because they only recently spoke to him and he lives outside of the United States.  *Id.*

The Court finds that the failure to disclose Stevens is neither substantially justified nor harmless.  At least as of Black's deposition, Plaintiffs knew that they did not have a witness who could testify as to the how they came into possession of the works from the authors of the Subject Musical Works.  Discovery at that point was still open.  Plaintiffs admittedly did nothing in the face of Blacks' testimony and instead decided to rest their arguments on the copyright registrations alone.  Indeed, they concede they did not even consider Stevens until after they read Defendant's summary judgment arguments admitting that they were not willing to "stand-pat" and they "initiated additional investigation."  ECF No. [200] at 5.  Plaintiffs never advised Defendants that

11

they had located Stevens, they never amended their Initial Disclosures, and they never sought leave of Court to re-open the discovery period.   Instead, they submitted a cursory and conclusory affidavit on a key issue as part of their Opposition.   Their conduct is not substantially justified; indeed, it cannot be justified at all.   If this is not the scenario that the Federal Rules of Civil Procedure were meant to proscribe it is hard to imagine what would be.

Moreover, the failure to disclose Stevens is not harmless as Defendants had no ability to depose or otherwise test this "new evidence." *Henriquez v. Total Bike, LLC*, 13-20417-CIV, 2013 WL 6834656, at *6 (S.D. Fla. Dec. 23, 2013) ("[C]ourts have consistently held that the affidavit of a witness cannot be used to support or oppose summary judgment where the other party did not have the ability to depose the witness."); *Lawver*, 300 Fed. Appx. at 770 (striking an affidavit submitted in opposition to summary judgment when the moving party did not have an opportunity to depose the witness based on non-movants failure to disclose.).   The Court cannot permit Plaintiffs to "'glean an unfair advantage over [Defendants] by relying on [a] witness to whom [Defendants] did not have access during discovery.'" *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1042 (S.D. Fla. 2020), *reconsideration denied*, No. 18-23125-CIV, 2020 WL 4586399 (S.D. Fla. Aug. 10, 2020) (citing *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 566 (S.D. Fla. 2001)).

Plaintiffs' passing reference that they would not oppose a deposition out of time is hardly an answer given that the parties have already filed summary judgment and the matter is set for trial.   Rather than amending their initial disclosures or seeking to extend discovery, which would have provided Defendants with an opportunity to seek discovery from Stevens, Plaintiffs took the most egregious road available, they simply surprised Defendants with this Affidavit.   Because their admitted failure to comply with the Federal Rules of Civil Procedure is neither substantially

12

Appendix 0032

justified or harmless, the Stevens Affidavit is **STRICKEN** and Defendants' Motion to Strike the Affidavit of Stevens should be **GRANTED**.

### 2.   *The Knox Affidavit*

In the Knox Affidavit, executed on November 13, 2020, Knox states that he performed "some legal services" on behalf of MSI, and at the direction of Nealy, from 1985 until the time of its administrative dissolution.  ECF No. [185-1].  He stated that based on his recollection it was Stevens who "prepared the copyright applications for most of the songs which were created by MSI's recording artists prior to Jonathan Black joining MSI."  *Id.*  Knox also said that he believed Stevens "prepared agreements that were signed by the recording artist who were engaged by MSI, and which contained provisions regarding the rights and responsibilities of the parties."  *Id.*

Defendants argue that the Affidavit should be stricken because Knox was only identified in the Initial Disclosures as having subject matter knowledge as to "Nealy's capacity and ownership interest in [MSI], and composition of [MSI]'s Board of Directors."  ECF No. [194] at 6; *see* ECF Nos. [194-1] at 3, [194-2] at 3.  Defendants argue that the subject matter of the Knox Affidavit falls well outside of that scope, as the Affidavit relates instead to the preparation of agreements with recording artists engaged by MSI.  ECF No. [194] at 6.

Plaintiffs counter that, unlike the case of Stevens, Knox was mentioned numerous times during the depositions of Plaintiff Nealy, Black, and Baker, when they testified regarding the execution of transfer agreements executed by MSI.  ECF No. [200] at 7.  As such, Defendants were on notice of Knox's expanded subject matter knowledge.  *Id.*  Because Defendants had notice, they argue, the Affidavit should not be stricken.

As an initial matter, it is clear that Knox was not disclosed as having any information on the subject matter he now addresses in the Affidavit.  That failure to disclose the subject matter is

Appendix 0033

grounds to strike the Affidavit unless Plaintiffs' failure can be substantially justified or is harmless. Here, the undersigned cannot find that their failure is substantially justified.  Plaintiffs proffer no reason as to why the Initial Disclosures failed to present Knox as an individual who had information regarding the assignments.  However, the Knox Affidavit purports to bolster the Stevens Affidavit by stating that Stevens prepared the agreements that were signed by the recording artists who were engaged by MSI . . . ."  ECF No. [185-1].  It appears to the Court that, as with Stevens, this is a line of evidence that Plaintiffs' simply chose not to consider.  Offering no justification for their failure to follow the Federal Rules of Civil Procedure, it appears instead that they simply chose not to pursue this evidence.  The failure is not substantially justified and now the issue now is whether the failure to disclose is harmless.

The Court finds that this failure is not harmless.  Plaintiffs' argument that Defendants were on notice that Knox had this information as a result of Baker's and Black's depositions, is unpersuasive.  ECF No. [200] at 7.  Upon closer examination, neither Baker nor Black gave Defendants sufficient information as to Knox's knowledge.  For example, when Baker was asked who presented the contract to him at MSI, he stated "Sherman Nealy, Tony Butler . . . [and] it may have been George Knox.  I think it was George Knox."  ECF No. [176-4] at 5–6.  When Black was asked who did the copyright registrations prior to him joining MSI, Black stated "No.  I couldn't say for certain who it was.  It could have been [done] by Mr. Knox or Pat Johnson or could have been any number of people."  ECF No. [176-5] at 21.  Neither of these statements provide sufficient notice to Defendants that Knox would have knowledge of the transfer agreements underlying copyright registrations given that Plaintiffs did not disclose that he had any such information in their Initial Disclosures, nor did they amend those Disclosures after those depositions.  Indeed, the point of Initial Disclosures, at least in part, is precisely to avoid chasing down every comment

14

made in a deposition or piece of paper.  A party should be able to rely that counsel has investigated his or her own case and made disclosures that are fair and complete.  Indeed, here, Defendants had a right to assume that counsel had spoken to Knox either when the Initial Disclosures were first made or after these depositions and concluded that he had nothing to add because the Initial Disclosures in fact were not amended. The fact that Defendants knew who Knox was or that others mentioned him as potentially having information is of no moment when they were not given the correct information as to what he knew.  In short, it was Plaintiff who bore the responsibility to inquire of Knox at least no later than those depositions, if in fact those deposition can be taken for what Plaintiffs suggest and confirm whether that information was correct and amend their Disclosures. When they did not do so, Defendants were well within their rights not to seek a deposition of Knox on that point.  Therefore, Plaintiffs' last-minute affidavit is prejudicial because Defendants have had no opportunity to explore the basis for Knox's testimony, and as such, their failure to properly disclose Knox is not harmless.  *See Rigby*, 717 F. App'x at 835 (striking of an affidavit where a party failed to describe the subject of the witness's knowledge under Fed. R. Civ. P. 26(a)(1)(A)(i)); *Pete's Towing Co. v. City of Tampa, Fla.*, 378 F. App'x 917, 919–20 (11th Cir. 2010) ( Eleventh Circuit upheld District Court Judge's order striking portions of a witness affidavit because it "included allegations that had not been previously disclosed to Defendants in response to discovery requests.").  The Defendants' Motion to Strike the Affidavit of Knox is **GRANTED**.

### 3. *Baker Affidavit*

Finally, Plaintiffs submitted the Baker Affidavit which addresses practices and procedures before the Copyright Office.  Although Baker was disclosed in the Federal Rule of Civil Procedure 26 Initial Disclosures he was listed as having information on "Nealy's capacity and ownership interest in [MSI], and [MSI]'s Board of Directors," "status of copyright issues," "fraudulent

15

activity of Tony Butler," and the "knowledge of Defendants' understanding of issues presented, and information concerning deliverables and accounts receivable to MSI."  ECF Nos. [176-12]; [194-1] at 2; [194-2] at 2.  However, the Baker Affidavit is a summary of what Baker alleges he discussed with a Ms. Veronica Patten, a Supervisory Copyright Specialist, working in the Records, Research and Certification Section of the United States Copyright Office.  ECF No. [176-12].

Defendants argue that the Baker Affidavit should be struck.  ECF No. [194] at 7.  Although he was listed on Plaintiffs' Initial Disclosures, this Affidavit is offered for matters outside the scope of his subject matter knowledge.  *Id.*  Defendants also argue that the Baker Affidavit is "pure hearsay consisting entirely of Baker's one-sided account of a conversation(s) he claims he had with the Copyright Office."  ECF No. [194] at 7.  In their Response, Plaintiffs state they do not oppose the striking of the Affidavit.  ECF No. [200] at 3 n.2.

In addition to the fact that Plaintiffs are not opposed to striking the Affidavit, the Court finds that there is nothing on the record that would support a finding that the failure to properly disclose Baker's area of knowledge is either substantially justified or harmless.  Plaintiffs proffer no reason for their failure to disclose this area of knowledge, and given the close of discovery, the failure to disclose is not harmless.  Finally, as Plaintiffs argue, the substance of the Affidavit is hearsay and lacks proper foundation.  Thus, the Defendants' Motion to Strike the Affidavit of Baker is **GRANTED**.

### III.     SUMMARY OF UNDISPUTED FACTS[2]

Plaintiff Nealy is the owner, president, and shareholder of MSI, a Florida corporation incorporated in 1983.  ECF Nos. [167] ¶¶ 2, 3; [176] ¶ 2.  Nealy was also the President and sole owner/shareholder of In the Mix, Inc. ("In the Mix"), a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.  Nealy formed MSI because he wanted to enter the music business and identify artists and others who could help launch a record company.  ECF No. [167] ¶ 7.  Although at the time of MSI's incorporation, Tony Buter ("Butler") was listed as the President of MSI, MSI's Articles of Incorporation were later amended to list Nealy as President and Butler as Vice President of MSI.  *Id.* ¶ 4.  Nealy was the "money man" funding the operations of MSI, and Butler was a disc jockey and more knowledgeable than Nealy about the music business.  ¶¶ 6, 8.  MSI was dissolved in November of 1986 and reinstated as an active corporation on or about January 19, 2017.  ECF No. [176] ¶ 14.  From 1983 to 1986, MSI recorded and released one album and a number of singles on vinyl and cassette.  ECF No. [167] ¶ 12.

Those singles released by MSI included the eight works that are at issue in this case: (1) "Fix It in the Mix" by Pretty Tony (Butler); (2) "Freestyle Express" by Freestyle; (3) "When I Hear Music" by Debbie Deb; (4) "Computer Language" by Pretty Tony (Butler); (5) "I Know You Love Me" by Trinere; (6) "Jam the Box" by Pretty Tony (Butler); (7) "Lookout Weekend" by Debbie Deb; and (8) "The Party Has Begun" by Freestyle.  ECF No. [176] ¶ 7.  Each work was registered with the United States Copyright Office.  The copyright registration for each reflects as

---

[2] The undisputed facts are taken from Defendants' Statement of Material Facts, ECF No. [167], Plaintiffs' Statement of Material Facts, ECF No. [176], Defendants' Response to Plaintiffs' Statement of Material Facts, ECF No. [183], Plaintiffs' Statement of Material Facts in Opposition including the Additional Facts, ECF No. [185], and Response to Plaintiffs' Additional Facts, ECF No. [192].

follows.   For "Fix It in the Mix," MSI is listed as the claimant[3] and author[4] and the copyright registration notes that the work was created for hire.   ECF No. [167-16] at 5–8.   For "Freestyle Express," In The Mix Inc. is listed the claimant and the author as the employer for hire of Calvin Mills, Moses Talbot, and Tony Butler.   *Id.* at 12–14.   The copyright registration also states it was transferred to claimants as "work made [for] hire."   *Id.* at 14.   For "When I Hear Music," the registration lists MSP[5] as the claimant, states that the author is "Music Specialist Publishing employer for hire of Tony Butler," and indicates that the work was created for hire.   *Id.* at 2–4.   For "Computer Language," the registration lists "Happy Stepchild Music Publ. Corporation & Music Specialist Publ." as the claimants, states that Tony Butler is the author, and indicates that the work was not made for hire.   *Id.* at 9–11.   For both "I Know You Love Me" and "Jam the Box" the copyright registrations state that the claimant is MSP, the author is Tony Butler, and the work was not for hire.   *Id.* at 15–20.   The copyright registrations for both "Lookout Weekend" and "The Party Has Begun" indicate that MSI is the claimant, Tony Butler is the author, and that the work was made for hire.   *Id.* at 21–26.   For both of those songs, the copyright registrations also state that the works were transferred to claimant by assignment.   *Id.* at 23, 26.

---

[3] A copyright claimant is either: "(i) the author of a work; or (ii) a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.   37 C.F.R. § 202.3(a)(3).   The latter category "includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration."   *Id.* at n.1.

[4] The copyright website, registration form, and label also indicate that "Pretty Tony," or Tony Butler, was artist or performer of the work.   ECF No. [167-16] at 5–8.

[5] Plaintiffs state that MSI has always been affiliated with MSP, a d/b/a of MSI, which was created to administer the publishing rights to compositions owned by MSI.   ECF No. [176] ¶ 3.   Defendants dispute this fact arguing that "no evidence has been produced to support this statement or that MSI owns any musical compositions."   ECF No. [183] ¶ 3.

Appendix 0038

In approximately March of 1989, the business of MSI came to a complete stop when Nealy was incarcerated for distributing cocaine.  ECF No. [167] ¶ 18.  Nealy's incarceration lasted from March 1989 to March 2008.  *Id.* ¶19.  Nealy was then incarcerated a second time, again for distribution of cocaine, from February 2012 to September 2015.  *Id.*  During Nealy's first incarceration, no one was authorized by Nealy to sell the MSI catalog and MSI had no contracts with third parties to publish or distribute any of the music in the MSI catalog.  *Id.* ¶ 20.  Nealy was also the president and sole owner and shareholder of In the Mix, Inc. ("In the Mix"), a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.

In 2007, Butler formed a company named 321 Music, LLC.  ECF No. [176] ¶ 24.  In February 2008, Atlantic obtained a license from Butler and 321, to use portions of the musical composition "Jam the Box" as an interpolation in the musical composition "In the Ayer" embodying the performance of the recording artist publicly known as Flo Rida.  ECF No. [167] ¶ 38.  Atlantic used DMG Clearances, Inc., a reputable copyright clearing house, to obtain the license, and DMG negotiated the license with an attorney representing Butler, 321, and MSI.  *Id.*

Upon his release from prison in March of 2008, Nealy was informed that a third party, Robert "Bo" Crane ("Crane"), was distributing the MSI catalog.  *Id.* ¶ 22.  Through MSI's consultant, Jonathan Black ("Black"), a meeting was arranged with Crane on June 9, 2008.  *Id.* ¶ 23.  It was a ten-minute meeting.  ECF No. [176] ¶ 19.  Nealy remembered "talking to them concerning whatever they [were] doing with any music that Music Specialist owned" and "letting them know that I was home and they had my music."  ECF No. 167 ¶ 23 (citing ECF No. [176-15] at 20–21).  At his deposition, Nealy was asked if he knew Pandisc was distributing his songs and music.  ECF No. [176-15] at 21.  He responded, "I heard they had possession and they were utilizing it."  *Id.*  Nealy was also asked at his deposition whether he ever provided Crane or his

19

lawyers "any proof that either [he] or [MSI] were the owners of the songs and records [Pandisc] was distributing." *Id.* Nealy stated that he never provided anything because "[he] was just coming home [after his first incarceration] and [he] didn't know what was going on." *Id.* at 21–22. Finally, Nealy was asked what if anything he did from that 2009 meeting with Crane up until Nealy's second incarceration in 2012. *Id.* at 22. Nealy responded, "I wasn't in no position to do anything" and that "[he] didn't know what to do." *Id.*

On July 25, 2008, Artist and Warner entered into an agreement with Butler and 321 whereby Artist and Warner purportedly became the exclusive administrators of the music publishing rights for the Subject Musical Works, and were transferred the rights to "grant licenses and collect royalties on behalf of th[e] writers and publishers shares" in the Subject Musical Works. ECF No. [176] ¶ 27. In addition to the Subject Musical Works, Artist and Warner purportedly became the exclusive administrators of the music publishing rights and were transferred the rights to license musical works, such as "In the Ayer," "Weekends" (a derivative work of "Lookout Weekend") and "Another Weekend" (a derivative work of "Lookout Weekend") by Black Eyed Peas, and "Fuego" (a derivative work of "When I Hear Music") by Pitbull. *Id.*

In 2009, Pandisc and Whooping Crane instituted a copyright infringement action in the Southern District of Florida regarding the Subject Musical Works against Atlantic, Artist, Warner, Butler, and 321. ECF No. [176] ¶ 29; *see* ECF No. [167-5]. Therein, Pandisc and Whooping Crane alleged that from 1989 to 1992, Butler's companies – Captain Productions, Inc. and CTan Music –transferred ownership rights in various musical works claimed by Plaintiffs. ECF No. [167] ¶ 25; *see* ECF No. [167-5] at 5–7. Neither MSI nor Nealy was notified of or joined as a party to this case. ECF No. [167] ¶ 25. This case was settled by a Mediated Settlement Agreement that was subsequently amended. *Id.* Shortly after, Pandisc and Whooping Crane brought another

Appendix 0040

lawsuit in the Eleventh Judicial Circuit in and for Miami Dade County, Florida against Butler and 321 based on fraudulent claims made in the Settlement Agreement and its amendment.  *Id.* ¶ 30. Neither MSI nor Nealy was ever notified of or joined as a party to this case either.  *Id.*  In 2015, the Settlement Agreement and the amendment were adjudicated fraud *ab initio* and unenforceable by the Honorable Judge John Thornton, and the parties were placed back into their positions relative to the ownership of the subject musical works.  *Id.*

In approximately January of 2016, shortly after Nealy was released from prison for the second time, Baker reached out to Nealy to determine whether MSI or Nealy had ever transferred any of the copyrights in the Subject Musical Works "to Butler or to anybody."  ECF No. [176-4] at 47.  When Nealy informed him that they had not, Baker then informed Nealy of Butler's purported transfers of the copyrights in the Subject Musical Works to the Defendants and the ongoing litigations and conflicting claims regarding ownership of the Subject Musical Works.  *Id.* This action was commenced thereafter on December 28, 2018.  ECF No. [1].

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56.  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).  Speculation or conjecture cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

21

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs contend that on this record the Court can find that they own the Subject Musical Works by virtue of executed songwriter agreements "pertaining to the compositions, which assigned the copyrights in the compositions controlled by them as songwriters to MSI/MSP," and Defendants contend that on this record the Court can find that Plaintiffs do not own the Subject Musical Works as no such agreements have been produced by Plaintiffs.  ECF Nos. [176] ¶ 10; [183] ¶ 10.

Appendix 0042

## V.      ANALYSIS

In order to establish copyright infringement, Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).  The matter at hand involves only the first prong: who owns the Subject Musical Works.  Indeed, Defendants concede that they are using, in one way or another, the Subject Musical Works.   This case is about ownership.

In order to determine who owns the Subject Musical Works, there are three principles that are undisputed and form the basis of the analysis.  First, it is well-settled and not in dispute that an author retains ownership over the copyright unless he or she unequivocally transfers that copyright to another in a signed writing.  17 U.S.C. § 204(a).  This requirement is known as the Copyright Act's Statute of Frauds.  *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 565 (S.D.N.Y. 2014).  Here, Butler is the author or co-author of the Subject Musical Works. ECF Nos. [167-16]; [167-22] at 5–6.  Plaintiffs contend that they acquired each of the Subject Musical Works from Butler by written agreements, and that based on those agreements, they own and registered the Subject Musical Works.

Second, a copyright registration is *prima facie* evidence of the validity of a copyright and the facts stated therein.  17 U.S.C. § 410(a-c); *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1236 (11th Cir. 2018) (as there was no dispute that the plaintiff, the state of Georgia, had a registered copyright, the burden of proof on whether the copyright was valid shifted to the defendant); *Latimer*, 601 F.3d at 1233 (Plaintiff produced a copyright registration and benefitted from the rebuttable presumption that the copyright

23

is valid).  Plaintiff argues that each of the copyright registrations of the Subject Musical Works list it as the owner, and therefore, under 17 U.S.C. § 501(b), they own the Subject Musical Works and have standing to sue for infringement of same.

Third, a "certificate of registration . . . is not conclusive on the copyright ownership issue" because the statutory presumption is "rebuttable," and to "rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 Fed. Appx. 913 (11th Cir. 2013); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) (registration "creates no irrebuttable presumption of copyright validity" but merely "orders the burdens of proof" so that "where other evidence in the record casts doubt on the question, validity will not be assumed").  Defendants make several arguments challenging the copyright registrations and argue that the burden has shifted back to Plaintiffs and that Plaintiffs have failed to show that they own the Subject Musical Works.  Before discussing whether Defendants have shifted the burden of proof back to Plaintiffs, the Court begins by reviewing the copyright registrations for each of the subject works in order to determine, as an initial matter, whether Plaintiffs have a *prima facie* case that they own the Subject Musical Works.

### A.  Plaintiffs Can Only Bring Suit As To Four Of The Subject Musical Works.

Three of the copyright registration certificates list Plaintiff MSI as the claimant—"The Party Has Begun," "Lookout Weekend," and "Fix it in the Mix."  ECF No. [167-16] at 5–7, 21–26.  Plaintiffs argue that upon administrative dissolution of MSI, the ownership interest in the Subject Musical Works held by virtue of the copyright registration certificates was transferred by operation of law to Nealy, who was the sole shareholder.  ECF No. [175] at 12.  However, MSI was reinstated as a Florida corporation in 2018.  ECF No. [176] ¶ 14 n.6.  Upon the reinstatement

Appendix 0044

of a corporation, following administrative dissolution, "the reinstatement relates back as if the dissolution never occurred." *Allstate Ins. Co. v. Levesque*, 2010 U.S. Dist. LEXIS 147353, at *9 (M.D. Fla. Nov. 9, 2010) (citing Fla. Stat. § 607.1422(3)).  Defendants argue that reinstatement fully and retroactively restores a corporation as if it was never dissolved, and therefore, Nealy has no basis for claiming that he has an interest the Subject Musical Works as the interest belongs to MSI.  ECF No. [182] at 10–11.  The Court agrees and finds that the copyright registrations show that MSI is the claimant, MSI has been reinstated and so the interest in these three musical works belongs with MSI.  Accordingly, the copyright registrations are *prima facie* evidence that Plaintiff MSI (not Nealy) owns these three works.

For "Freestyle Express," the copyright registration lists the claimant as In the Mix, Incorporated ("In the Mix").  ECF No. [167-16] at 12–14.  It is undisputed that Nealy was the president, sole owner and shareholder of In the Mix, a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.  Upon the dissolution of In the Mix, Inc., Plaintiffs make the argument that the asset of the copyright, belonging to In the Mix, Inc., passed to Nealy by operation of law.  ECF No. [175] at 11-12; *see Wilmington Sav. Fund Soc'y v. Good Samaritan Fund, Inc.*, Civil Action No. 2:15-cv-00211-WCO-JCF, 2017 U.S. Dist. LEXIS 222970, at *20–21.  The undersigned agrees.

Prior to the 1989 amendments to the Corporations Chapter of the Florida Statutes, Section 607.301 of the Florida Statutes provided that "[t]he directors of the corporation at the time of its dissolution shall thereafter be and constitute a board of trustees for any property owned or acquired by the dissolved corporation." *See Gould v. Brick,* 358 F.2d 437, 439 (5th Cir.1966) ("[I]n Florida the statutory trustees take title to corporate property upon the dissolution of the corporation, and are charged with the fiduciary duties imposed upon them by the statutes, with the right to sue and

Appendix 0045

subject to being sued, *Trueman Fertilizer Co. v. Allison,* Fla., 81 So.2d 734."). Therefore, at the time of the administrative dissolution, the assets of In the Mix, Inc. transferred to Nealy by operation of law. As such, the Court finds that the copyright registration is *prima facie* evidence that Nealy owns this work. *See* 17 U.S.C. § 410(c) (stating that "the certificate of registration . . . shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate.").

For the remaining four musical works—"Jam the Box," "I Know You Love Me," "Computer Language," and "When I Hear Music"—the claimants listed on the copyright registration certificates are neither MSI nor Nealy. Indeed, the claimants listed are entities for which there is no evidence in this record to support a finding that Plaintiffs have an ownership interest. ECF No. [167-16] at 2–4, 9–11, 15–20. Specifically, for "Jam the Box," "I Know You Love Me," and "When I Hear Music," the claimant is listed as MSP. ECF No. [167-16] at 2–4, 15–20. The copyright claimant for "Computer Language" is "Happy Stepchild Music Publ. Corp" and MSP. ECF No. [167-16] at 9–11.

As Defendants point out, Plaintiffs have only "vaguely plead" that MSP is affiliated with MSI. ECF No. [165] at 19–20. Indeed, although Plaintiffs state that MSI has always been affiliated with MSP, as MSP was created to administer the publishing rights to compositions owned by MSI, ECF No. [176] ¶ 3, there is nothing in the record that supports that allegation.

Plaintiffs, in response, only point to the record label imprints for two songs. ECF No. [184] at 18–19. Specifically, for "Computer Language" and "When I Hear Music," the label imprints on the record state that the songs were "recorded at MSI Studios." ECF No. [176-9] at 4, 6. However, that neither shows that MSP is affiliated with MSI or Nealy, nor does is it suffice to

Appendix 0046

prove that MSI or Nealy have any standing to sue on MSP's behalf.   Given that, there is nothing
in the record to support a finding that either Plaintiff has standing to sue on behalf of MSP.

Likewise, for Happy Stepchild Music Publ. Corp., listed as a co-claimant along with MSP
for the song "Computer Language," there is no evidence in the record that either MSI or Nealy
have any authority to bring suit on its behalf.   As such, the Court **RECOMMENDS** that
Defendants' Motion for Summary Judgment be **GRANTED** as to "Jam the Box," "I Know You
Love Me," "Computer Language," and "When I Hear Music."  On this record there is no evidence
that Plaintiffs own these works.  Therefore, they have no standing to bring an infringement action
as to these songs.

The Court now considers whether summary judgment can be entered on the issue of
ownership as to "The Party Has Begun," "Lookout Weekend," "Fix it in the Mix,." and Freestyle
Express" (the "Remaining Subject Musical Works").

### B.  Defendants Have Rebutted The Presumption of Ownership Afforded to the Copyright Registration Certificates.

It is undisputed that Plaintiffs were not the authors of these Remaining Subject Musical
Works.  Therefore, and as discussed above, ownership of the Remaining Subject Musical Works
could only have been transferred to them by a written document.  Plaintiffs contend that although
they no longer have copies of those assignments or contracts, the copyright registrations
themselves note that they are the claimants (by way of written assignment or because the works
were "for hire") and therefore they are the owners of the Remaining Subject Musical Works for
purposes of asserting this infringement claim.  Plaintiffs contend that these copyright registration
certificates are *prima facie* evidence of their ownership.  They are correct, at least as to the
Remaining Subject Musical Works, that the copyright registration certificates show them as
claimants and serve as *prima facie* evidence that they own the works.  However, the inquiry does

Appendix 0047

not end there, as the certificates are not definitive proof but simply set the presumption with them in the first instance.

Indeed, as previously noted, to "rebut the presumption of validity [of a registration] an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement." *Progressive Lighting*, 549 Fed. Appx. at 919 (the Eleventh Circuit held that the defendants "rebutted the presumption of validity by offering evidence showing, *inter alia,* that the works whose copyrightability is at issue were useful articles that did not contain separable copyrightable elements"); *Dellacasa, LLC v. John Moriarty & Assoc. of Fla., Inc.*, 2008 WL 299024, at *14–15 (S.D. Fla. 2008) (defendants rebutted the presumption of validity of the copyright that plaintiff was the owner of registered shop drawings by pointing to the language in the underlying general contract purportedly transferring ownership and the actual actions of the parties); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) (although the "Hogarths contend that the registrations for the [subject works] . . . created a presumption that Burne Hogarth was the author" as stated on the early registrations, defendant overcame the presumption with evidence, including an agreement from 1970, that Hogarth created work for hire).  Specifically, a copyright registration's presumption of validity can be rebutted: (1) when the copyright challenger provides evidence that the copyright registration holder did not timely register the copyright, 17 U.S.C. § 410(c); (2) when the copyright challenger provides evidence that the copyright registration holder is not the author of the work and has not been transferred the work by way of written assignment, *Arthur Rutenberg Homes, Inc. v. Berger*, 910 F. Supp. 603, 605 (M.D. Fla. 1995); (3) when the copyright challenger provides evidence that fraud has been committed on the copyright office, *see Robbins v. Artits--Usher*, No. CV411-193, 2011 WL 5840257, at *3 n.4 (S.D. Ga. Aug. 29, 2011); and (4) when the copyright challenger

Appendix 0048

provides evidence that the copyright registration holder has already transferred the copyrights, *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1239–40 (S.D. Fla. 2019).  Defendants argue that they have presented evidence challenging that the validity of the copyright registrations, specifically, challenging that they were transferred by way of written agreement to Plaintiffs, and as such, Plaintiffs now bear the burden of proof that they are the owners, a burden that they argue Plaintiffs cannot meet.

With the testimony of Butler conspicuously absent from the record, Defendants make several arguments and point to several different pieces of documentary and third-party evidence to argue that the presumption has shifted back to Plaintiffs to show that they own the Remaining Subject Musical Works.  ECF No. [166] at 19–26.  Defendants argue that there are competing copyright registrations for some of the works at issue and that various claims of ownership were made in prior litigation between other parties as to these musical works.  *Id.* at 20.  For example, they point to evidence that from 1989 to 1992, two companies wholly owned by Butler, Captain Productions, Inc. and C-Tan Music, transferred rights in various works claimed by Plaintiffs, including many of the works at issue in this case, to Pandisc and Whooping Crane.  *Id.* at 21; *see* ECF No. [167-5].  They also point to the fact that Baker, the Plaintiffs' own 30(b)(6) deposition witness, signed an agreement in another case that acknowledged that Butler was the sole author and co-owner with Whooping Crane of six of the musical works in this litigation.  ECF No. [166] at 21; *see* ECF No. [167-19].  Defendants point out that Butler has claimed to represent MSI in the past, casting doubt on whether Plaintiffs even control MSI as they say.  ECF No. [166] at 21.  They also review the history of prior suits among different parties where different statements as to the ownership of the songs were made.  *Id.*

Appendix 0049

The undersigned finds these reasons unpersuasive because they all, at their core, relate to Butler assigning rights that, under Plaintiffs' theory, he had already assigned to them either by agreement or because he was an employee for hire for MSI.  Allowing this evidence to rebut the presumption would render the presumption afforded copyright registrations meaningless because the nefarious actions of someone fraudulently selling rights could strip the proper owner of the presumption afforded by the registration itself.

However, Defendants' argument that the statements of some of Plaintiffs' witnesses, including Nealy, are sufficient to shift the presumption of validity is well taken, especially in the absence of any of the written agreements between Plaintiffs and the author of the songs, Butler. *See* ECF No. [166] at 21–26.  The undersigned finds that the testimony of Black, a consultant for MSI who was hired to setup MSI's publishing, including preparing copyright registrations, is more than sufficient to shift the burden back to Plaintiffs to prove that they own the Remaining Subject Musical Works.  *See* ECF No. [176-5] at 6–7.  Nealy testified in his deposition that Black would have prepared the agreements with the songwriters:

> Q: Are you aware of any written agreement between Music Specialist Inc. and Freestyle?
>
> A: Jonathan Black was handling agreements like that.
>
> Q: So if there were any agreements, Jonathan Black would know about them.
>
> A: Yes, he would know about them.

ECF No. [176-15] at 33.  During his deposition, however, Black stated that he did not prepare or personally sign the copyright registrations and did not prepare any corresponding agreement for Butler by which Butler assigned any of his rights. ECF Nos. [166] at 25–26; [167-3] at 4–8, 10–12, 16–17.  Specifically, during his deposition Black was shown the copyright registration for "Fix It In The Mix."  ECF No. [176-5] at 14.  Counsel pointed out that the copyright registration lists

Music Specialist Inc.'s address in New York.  Black stated that he did not prepare that copyright registration because he would not have completed any registration where MSI's address was listed in New York.  *Id.*  Black was shown the copyright registration for "Freestyle Express."  ECF No. [167-3] at 7–8.  He testified that "Freestyle Express was released prior to [his] coming to Music Specialist" and affirmed that he did not prepare that copyright registration.  *Id.* at 8.  Black was also asked about the song "Lookout Weekend."  ECF No. [167-3] at 10.  Black initially stated: "I don't believe that I did Lookout Weekend" and that he thought it was done before his time.  *Id.* at 11.  However, when he was shown the copyright registration and realized that it was a handwritten application, he confirmed he did not prepare that one because he "never" handwrote them.  *Id.* Finally, Black was then asked about the song "The Party Has Begun."  ECF No. [167-3] at 11–12. He was shown the copyright registration, which was handwritten, and he responded: "not mine." *Id.* at 12.  Further, Black testified that if he did not prepare the copyright registration for a song, he also would not have prepared the songwriter agreement.  ECF No. [167-3] at 17.  Therefore, Black's testimony failed to show that he prepared or had knowledge of any of the songwriter agreements for any of the Remaining Subject Musical Works.

Of course, Black's testimony directly contradicted Nealy's deposition testimony that Black prepared all of the registrations in this case.  ECF No. [176-15] at 77.  Black's testimony casts doubt on the validity of the copyright registrations because it directly disputes the basis on which the copyright registrations were issued, namely, that Butler assigned his rights to Nealy or MSI by written agreement.  Defendants have rebutted the presumption and thus the burden shifts to Plaintiffs to prove that they are owners of the four Remaining Subject Musical Works at issue.

31

### C. The Issue Of Ownership As To The Remaining Subject Musical Works Is Not Subject To Summary Judgment.

The Court must now consider what other evidence Plaintiffs present to meet their burden that they are the owners of the Remaining Subject Musical Works. For certain, Plaintiffs still have the copyright registrations which evidence transfers by assignment or as work for hire. ECF No. [176-10] (copyright registration for "The Party Has Begun" states it was transferred by assignment; copyright registration for "Lookout Weekend" states it was transferred by assignment; and copyright registration for "Freestyle Express" states it is "work made for hire"). Although they are no longer *prima facie* evidence, the Court would be hard pressed at this juncture to conclude that they are not evidence at all.

Second, Plaintiffs have the testimony of Nealy who testified that MSI had agreements with Butler. Although his testimony certainly lacks clarity, he testified that during the relevant time period there were songwriter agreements with Butler whereby Butler would have given MSI ownership of Butler's songs. ECF No. [176-15] at 41. Nealy also testified with respect to "Fix It In The Mix," that he was the "executive producer" who funded the records and that Butler worked for hire for Music Specialist as an engineer. *Id.* at 39. Finally, Plaintiffs offered up the testimony of another songwriter, Baker, who recalled having signed songwriter agreements with MSI. ECF No. [176-4] at 4–5.

To be sure, the evidence proffered by Plaintiffs in support of their claim is thin. However, the standard the Court must use is whether there is more than "[a] mere 'scintilla' of evidence supporting the opposing party's position." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (quoting *Liberty Lobby*, 477 U.S. at 252). Here, a jury could find Nealy's testimony credible and that the copyright registrations themselves are sufficient evidence to find that Plaintiffs own the works. For the Court to make that determination now would necessitate that the Court make

32

credibility determinations as to Nealy's testimony, which is a task that falls to the jury.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Liberty Lobby*, 477 U.S. at 255.  Given the existence of the copyright registrations and the testimony of Nealy, this Court cannot say that a rational trier of fact would be unable to find in favor of Plaintiffs or in favor of Defendants.  The issue of ownership, as it sits here, is one for the jury and one that Plaintiff will have the burden of establishing.

As to whether "The Party Has Begun," "Lookout Weekend," and "Freestyle Express" were made for hire pursuant to 17 U.S.C. § 101, the Court finds that based on the record before it and the arguments submitted, summary judgment would not be appropriate.  Defendants state that none of these works are for hire because Butler did not create any within the scope of his employment, as Nealy testified that Butler was not a songwriter.  ECF No. [166] at 26–27; *see* ECF No. [176-15] at 49.  Plaintiffs counter by relying on the copyright registrations which, on their face, state that the work was completed for hire.  ECF No. [184] at 30; *see* ECF No. [176-10] at 2, 8, 17.  Furthermore, Plaintiffs argue that the works were within Butler's scope of employment.  ECF No. [184] at 31.  Any statement by Nealy that Butler was not a songwriter was due to Nealy's "misunderstanding of the term 'songwriter.'" *Id.*  Although Plaintiffs cannot rely on the "work for hire" designation on the copyright registrations alone as proof, Nealy's testimony, if believed, in conjunction with the copyright registrations could be enough for the jury.

Finally, Defendants' argument that Butler is, at a minimum, a co-owner of the musical works and that this serves as a complete defense to infringement because co-owners have "an independent right to use or license the use of a duty," is unpersuasive given the procedural posture

Appendix 0053

of the case.  ECF No. [166] at 28; *see Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1258 at n.2 (11th Cir. 2014).  Defendants point to Plaintiffs' interrogatory responses as evidence that Butler has co-ownership of some of the copyrights.  ECF No. [166] at 29.  Plaintiffs respond that for "The Party Has Begun," "Lookout Weekend," and "Freestyle Express," Butler was not a co-owner because he worked "for hire."  ECF No. [184] at 30–32.

Given the Court's finding above, the Court cannot conclude that the issue can be decided on summary judgment.  In regard to "Fix It In The Mix," Plaintiffs state that both Butler and Nealy maintained a writer's share, or beneficial ownership, of 25% that entitled them only to royalties, but not to legal title to the copyright.  ECF No. [184] at 32–33; *see Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (songwriter who assigns copyright ownership in exchange for royalties is beneficial owners of copyright).  Indeed, Plaintiffs' Amended Interrogatories state that the remaining 50% of ownership was the "publisher's share" held by MSI.  *See* ECF No. 167-22 at 11.  Plaintiffs then argue that the royalty statements received by Nealy from his own 25% writer's share of "Fix It In The Mix" are the same amount of royalties Butler would have received for his equal 25% writer's share.  *Id.* at 33; *see* ECF No. [167-17].  Plaintiffs state that this beneficial ownership, or *writer's share*, is distinct from the *publisher's share* held by MSI, which entitled it—not Nealy or Butler individually—to control the copyright. ECF No. [184] at 33–34.  In the absence of agreements, the Court is again left with Nealy's testimony to evaluate in order to determine whether Defendants claim is correct.  Because doing so would require the Court to make credibility findings, the Court cannot grant summary judgment based on this argument.

### D.  Plaintiffs' Claim Is Not Barred, At This Stage, By The Statute Of Limitations.

The relevant statute of limitations is set by 17 U.S.C. § 507(b) which states that "no civil action shall be maintained under the provisions of this title unless it is commenced within three

Appendix 0054

years after the acclaim accrued."  Plaintiffs sued Defendants for infringement on December 28,

2018, and so the date for limitations purposes is December 28, 2015.  Plaintiffs claim that although

Defendants were openly exploiting their works since 2008, they only discovered that Defendants

were infringing on their copyright within three years of December 2018.  ECF No. [184] at 36–47.

Plaintiffs also argue that the Court should adopt the "discovery rule" and consider that the instant

claim accrued on the date that Plaintiffs knew or should have known that Defendants were

infringing on their rights and not on the date that Defendants infringed.  ECF Nos. [175] at 13–15;

[184] at 47–50.

Defendants argue that because the gravamen of the case sounds in ownership, as opposed

to infringement, the statute of limitations accrues only once, when Plaintiffs knew or should have

known their ownership rights were being violated.  ECF No. [166] at 30–35.  Defendants argue

that Plaintiffs knew or should have known that their ownership was being challenged at least as

far back as mid-2008 when Nealy met with Crane about Crane's use of the MSI catalogue, and

that as such, their present suit filed many years later is clearly time-barred.  *Id.* at 35–45.

As an initial matter, the Court needs to consider whether the case at hand is one of

ownership or one of infringement.  Specifically, if the action is one sounding in infringement, the

claim accrues each time the infringing work is distributed, and each distribution creates a new

wrong and gives rise to a discrete claim which start anew the limitations period.  *Petrella v. Metro-

Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).  Whether the discovery rule, using when the

plaintiff knew or should have known of the infringement applies, has not been considered by the

Eleventh Circuit but, as discussed below, is not at issue here.   *Sieger Suarez Architectural

Partnership, Inc. v. Arquitectonic Intern. Corp*., 998 F. Supp. 2d 1340, 1354–55 (S.D. Fla. 2014)

(noting that the better practice is to use the discovery rule for infringement actions).  However, if

35

the matter is one sounding in ownership, the claim only accrues once, at the time the plaintiff learns or should have learned that the defendant was violating his ownership rights. *Webster v. Dean Guitars*, 955 F.3d 1270, 1276–77 (11th Cir. 2020).

Defendants heavily rely on the Eleventh Circuit's recent opinion in *Webster.* There, the plaintiff filed its action in 2017 claiming that Dean Guitars had produced and sold replications of guitars containing the lightning storm graphic without the plaintiff's consent and without payment of royalties for using the design. *Webster,* 955 F.3d at 1272. Both parties agreed that Dean Guitars reproduced the graphic on several guitar models without Webster's permission, leaving ownership the only disputed issue in the case. *Id*. at 1276. The Eleventh Circuit, in affirming summary judgment in the defendants' favor, agreed that the case concerned copyright ownership not infringement as the main argument advanced by the plaintiff was that he owned the image at issue and that the defendant had clearly and expressly repudiated the claim of ownership. *Id.* at 1276. The Eleventh Circuit held that because the plaintiff had reason to know his ownership rights were being violated in 2004 when he first learned that Dean was reproducing the subject guitar or even in 2007 when the owner of Dean Guitars sent an email to the plaintiff saying that another party was the  legal owner of the lightning storm graphic, the claim started accruing then and accrued only once and not each time the graphic was replicated. *Webster*, 955 F.3d at 1276. Given those facts, the Circuit Court concluded that the three-year statute of limitation period had expired well before the plaintiff brought his copyright action in 2017 thus barring the plaintiff from any relief. *Id.* at 1277.

The Court agrees that the case here, as was the case in *Webster,* is one of ownership, not infringement.  Like *Webster*, there is no dispute that Defendants are infringing, the issue is whether Plaintiffs own the works.  Like the plaintiffs in *Webster*, Plaintiffs' main argument is that they own

36

the Remaining Subject Musical Works.  Like the defendants in *Webster*, Defendants claim that Plaintiffs do not own the works, and that their right to use the works derives from the true owner of the work.  The issue now turns on *when* Plaintiffs knew or should have known that Defendants were challenging their ownership to the Remaining Subject Musical Works.  Given the procedural posture of the case, in order for Defendants to succeed on summary judgment, they must be able to prove, by undisputed facts and with all reasonable inferences and reasonable doubts drawn in favor of Nealy, that Nealy was aware of, or that a reasonable person in Nealy's position should have been aware of Defendants' infringements prior to December 28, 2015.  *Habersham Plantation Corp. v. Molyneux*, No. 10-61526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 117511, at *14–16 (S.D. Fla. Aug. 19, 2011) (denying defendants' partial summary judgment as to whether three-year statute of limitations of the Copyright Act barred plaintiff's copyright infringement claims because Defendant could not "demonstrate, by undisputed facts, that Plaintiff 'knew or reasonably should have known' of those acts of infringement occurring more than three years before the lawsuit was filed").  The Court finds that this is a burden that Defendants cannot meet on this record.

The first possible notice to Nealy, according to Defendants, was the meeting Nealy had with Crane.  ECF No. [166] at 38–41.  Based on his testimony, Nealy knew that Crane and his companies, were using the MSI catalog as early as June 2008.  At his ten-minute meeting with Crane in June 2008, Nealy testified that he was aware that the MSI catalog was being distributed.  ECF No. [176-15] at 19.  Nealy remembered talking to Crane "concerning whatever they was doing with any music that Music Specialist owned" and "letting them know that I was home and they had my music." *Id.* at 20–21.  At his deposition, Nealy was asked if he knew Pandisc was distributing his songs and music.  *Id.* at 21.  He responded, "I heard they had possession and they

were utilizing it." *Id.* There is no evidence on the record, or from Nealy's deposition, that Crane or Butler were challenging Nealy's ownership of the copyrights in question. When Nealy was asked at his deposition whether he ever provided Crane or his lawyers "any proof that either [he] or [MSI] were the owners of the songs and records [Pandisc] was distributing," Nealy stated that he never provided anything because "[he] was just coming home [after his first incarceration] and [he] didn't know what was going on." *Id.* at 21–22. Finally, Nealy was asked what if anything he did from that 2009 meeting up until Nealy's second incarceration in 2012. *Id.* at 22. Nealy responded, "I wasn't in no position to do anything" and that "[he] didn't know what to do." *Id.*

The Court finds that the meeting with Crane does not go to the issue at hand–when Plaintiffs knew that *Defendants* were challenging his ownership rights. To be sure, Nealy might have a difficult time pursuing an infringement claim suit against Crane on this record. However, the Crane meeting would not have provided Nealy with any notice that these Defendants were challenging his ownership interest. Indeed, in *Webster*, the plaintiff had reason to know that the defendants were challenging his ownership interest because the defendants plainly and expressly repudiated the plaintiff's ownership. 955 F.3d at 1275–77. Indeed, faced with the plaintiff's notice that their guitars were infringing with his ownerships interest, the defendants' response was not that they were not infringing but that the plaintiff was not the owner of the design. A finding that Crane's challenge to Plaintiffs' ownership interest, (assuming that in fact that was the gravamen of the meeting) bars Plaintiffs from asserting their ownership interest as to *these* Defendants is not supported by the decision in *Webster*.

Defendants argue that there are other facts that show that Plaintiffs knew or had reason to know that Defendants were using their works. They argue that: (1) there were at least five other lawsuits encompassing the musical works at issue; (2) Nealy intervened in 2017 in an ongoing

litigation, *Baker v. Warner/Chappell Music, Inc.*, 14-22403, 2017 WL 45772247, *4–6, n.7 (S.D. Fla. Oct. 12, 2017); (3) Nealy's allegedly infringed work was widely disseminated so he should have known of the infringement based on its commercial success; (4) Nealy received several royalty checks, associated with performances of the composition "Fix It In The Mix" which should have put him on notice of infringement; (5) one of those royalty statements specifically identified Warner as the administrator of the song "Fix It In The Mix;" and (6) the failure to receive royalties on any of the other songs despite their widespread dissemination.  ECF No. [166] at 37–45.

Nealy responds that none of these facts indicate that Nealy knew of Defendants' challenge to their ownership interest prior to December 28, 2015.  ECF No. [184] at 36–47.  Regarding the five other lawsuits encompassing the works at issue, Nealy states that these did not serve to put him on notice of any potential infringement because he was in jail most of the time.  *Id.* at 41–42.  Although MSI was included in a 2006 case, Nealy was in prison.  *Id.* at 41.  Additionally, neither MSI nor Nealy were notified or joined as a party to the 2009 federal case, the 2010 state case, the 2014 federal or state cases.  *Id.* at 42.  Indeed, after learning of the litigations in January 2016, it was then that Nealy took action and appeared in the still ongoing 2006 state case and moved to intervene in the 2014 federal case.  *Id.* at 41–42.  Plaintiffs also state that even though some of the Remaining Subject Musical Works were widely disseminated, this does not by itself evidence Nealy's knowledge of the infringement.  *Id.* at 44.  As to the BMI royalty checks associated with performances of the composition "Fix It In The Mix" and indicating that Warner was an administrator of the song, Plaintiffs explain that he "disregarded" these royalty statements.  *Id.* at 45.  Additionally, Nealy states that he did not even receive the royalty statement, dated September 18, 2015 showing Warner as the administrator until later, as it was sent to an old address.  *Id.*

39

Plaintiffs also argue that the fact that he was *not* receiving royalties, despite the widespread dissemination is also insufficient on its own to put Nealy on notice of infringement. *Id.* at 46–47.

Moreover, when Nealy was asked when "did [he] first become aware that Tony Butler was involved in licensing music to any of the [D]efendants in this case," he responded, "probably 2015" but did not specify when in 2015. ECF No. [176-15] at 37. When asked how he became aware, he explained that "[he] went to the state court and they were speaking about the litigation, what was going on concerning this case in the state court. And that's when [he] contact[ed] a couple of lawyers to help [him] out with this matter." *Id.* Nealy explained he was "trying to find out who [had] the music and who [was making] the money off it, so I went after them." *Id.* Nealy also maintains that he did not even hear the popular song "In the Ayer" which was an alleged interpolation of "Jam the Box," until 2015 or 2016, when it became part of this lawsuit and was played to him by Byron Smith. ECF No. [176-15] at 69. Indeed, he says he does not listen to music anymore. *Id.*

Although Defendants state that Nealy's incarceration cannot excuse his delay, Defendants cite to two inapplicable cases—*Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) and *McComb v. Jones*, No. 16-61104, 2017 WL 2380285, at *3 (S.D. Fla. May 8, 2017)—which deal with prisoners seeking to toll the statute of limitations on appeals of their convictions. As articulated in *Sieger*, the "statute of limitations begins to run when Plaintiff learned of or . . . should have learned" of the infringement; and, "should have learned" involves considering "a reasonably prudent person in Plaintiff's position." 998 F. Supp. 2d at 1354–55 (citing *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008); *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). As such, even if the Court were to consider that the facts are undisputed as to this issue, a finding that does not appear possible on this record, reasonable minds could differ on the

40

inferences arising from undisputed facts, namely whether Nealy had reason to know that

Defendants were infringing. *See Miranda*, 975 F.2d at 1534.[6] Moreover, in order to determine

when Plaintiff knew or should have known that Defendants were challenging their ownership

rights, the Court must make credibility determinations, particularly Nealy's testimony. As such,

summary judgment should be **DENIED**.

## VI.    ORDER AND RECOMMENDATION

For the reasons noted above, the undersigned hereby:

> **ORDERS** that Defendants' Motions to Strike Plaintiffs' Response to Defendants' Statement of Material Facts, ECF No. [193], be **DENIED**;

> **ORDERS** that Defendants' Motions to Strike the following Affidavits of Stevens, Knox and Baker, ECF No. [194], be **GRANTED**;

> **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. [166], be **GRANTED IN PART AND DENIED IN PART**; and

> **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment, ECF No. [175], be **DENIED**.

## VII.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation

with the United States District Court Judge for the Southern District of Florida, within

FOURTEEN (14) DAYS of being served with a copy of this Report and Recommendation. Failure

to timely file objections will bar a *de novo* determination by the District Judge of anything in this

---

[6] Plaintiffs conflate the issue of when an action accrues, the discovery rule, and how far back they can seek damages. Although an action, sounding in ownership or infringement, accrues when a plaintiff knew or should have known that their rights were being infringed, their damages are limited to the three-year period before they filed suit even if the infringement went further back than the three-year period. *Petrella*, 572 U.S. at 672. Although this issue was reviewed by the undersigned when considering the scope of discovery, the undersigned made clear that the standard for discovery was certainly lower, broader and different than what the Court must consider now. Based on the parties briefing of the issue and the Court's consideration of *Petrella*, the damages available to Plaintiffs are capped to the three-year statutory limit.

Appendix 0061

Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

        **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 8th day of March, 2021.

_____

**JACQUELINE BECERRA**
**United States Magistrate Judge**

42